NO 01-13-00920    **772-15**

ORIGINAL

IN THE
COURT OF CRIMINAL
APPEALS OF TEXAS

Lydell Anton Jones
Petitioner

V.

THE STATE OF TEXAS
Respondent

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

Petition in Cause No. 12-09-09812
From the 221st Judicial District Court of
Montgomery County, Texas and

The Court of Appeals for the
First Judicial District Houston, Texas

FILED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

# PETITION FOR DISCRETIONARY REVIEW

NO ORAL ARGUMENT REQUESTED

Lydell Anton Jones
TDCJ # 1902538
2661 FM 2054 (Coffield Unit)
Tennessee Colony, Texas 75884
Pro-se

# IDENTIY OF PARTIES
## AND COUNSEL

Petitioner                                                    Lydell Anton Jones

Petitioner's trial counsel Mr. Jose E. Mata                   (Pro-Se)

Petitioner's Appellate counsel Mr. Erik Berglund             (Pro-Se)

Respondent                                                    Lydell Anton Jones

Respondent's trial counsel

Mr. Jose E. Mata
318 N. Main Street
Conroe, Texas 77301
(936) 539-6282
(936) 539-6382 FAX

Respondent's Appellate counsel

Mr. Erik Berglund
300 W. Davis, Suite 515
Conroe Texas 77301
(936) 441-5200
(936) 539-2263 FAX

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES COUNSEL ............................i

TABLE OF CONTENTS ...............................ii

INDEX OF AUTHORITIES ...........................iii

STATEMENT REGARDING ORAL ARGUMENT (NONE)...2

STATEMENT OF THE CASE ........................2

STATEMENT OF PROCEDURAL HISTORY ...............2

GROUND FOR REVIEW:

    1. Did The Appeals court err in finding that the evidence was legally sufficient to sustain a conviction because evidence was insufficient to find that petitioner knowingly possessed phencyclidine with the intent to deliver or manufacture? ............................2

    2. Did The Appeals court err in finding that the search and seizure of the petitioners mail a violation of his 4th Amendment rights? if searched and seized without seeking a warrant. ......................2

    3. Did The Appeals court err in finding that highly prejudicial, and inflamatory, hearsay, and unauthenticated information downloaded from a cell phone, erroneously admitted by the trial court was harmless? ................2

ARGUMENT ...............................3-7

PRAYER FOR RELIEF ..........................8

CERTIFICATE OF MAILING .....................8

CERTIFICATE OF SERVICE .....................8

# APPENDIX

A. THE FIRST COURT OF APPEALS' OPINION

ii

# INDEX OF AUTHORITIES

Dorsey v. State, 24 S.W.3d 921-22 (TEX. APP-Beaumont 2000, NO Pet.) ......7

EVANS V. State, 185 S.W 3d 30 (Tex. App - San Antonio 2005) .............. 3

May v. State, 784 S.W.2d 494 (Tex. App- Dallas. pet ref'd) ............... 6

Murray v. State, 804 S.W.3d 279.283 (Tex. App – Fort Worth 1991 pet ref'd ........... 6

Poindexter V. State, 115 S.W.3d 295 (Tex. App - Corpus Christi' 2003 .............. 4

Robbin v California, 453 u.s. at 426-427, 101 s.ct at 2845 .......... 5

Roberson V. State, 80 S.W.3d 780 (Tex.App-Houston (1 Dist) 2002) ................. 3

Stephen V.State, 269 S.W.3d 178 (Tex.App-Texarkana 2008 pet ref'd ................. 4

Tienda V State, 358 S.W.3d 633 (Tex.Crim App 2012) .............. 7

United States V. Herrera C.A. 10 (N.M) 810 F.2D 989) .................... 5

United States V Jacobson 466 u.s. 109,114, 104 S.Ct 1652 80 L.ED.2D 85 (1984) ........ 5

United States V Leeuwen 397 u.s. 249,251, 90 S.Ct 1029, 25 L.ED.2D 282 (1970) ..... 5

## STATUTES:

TEX. PENAL CODE 6.03 .............3

TEX. HEALTH & SAFETY CODE 181.112(a) .............. 3,4

## RULES:

TEXAS RULE OF APPELLATE PROCEDURE 66.3 .......... 3,10

TEX.Rule.Evid 104(a) .............. 7

TEX.Rule.Evid 801 ............... 6

TEX.Rule.Evid 901 ............... 7

NO. 01-13-00920

# IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

---

## LYDELL ANTON JONES
Petitioner

## V

## THE STATE OF TEXAS
Respondent

---

Petition in Cause No. 12-09-09812
From the 221st Judicial District Court
of Montgomery County, Texas and

The Court of Appeals for the First
Judicial District Houston, Texas

---

# PETITION FOR DISCRETIONARY
# REVIEW

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS
OF TEXAS:

LYDELL ANTON JONES petitions the Court to review the
judgment affirming his CONVICTION for POSSESSION of a CONTROLLED
SUBSTANCE with Intent to Deliver/Manufacture in Cause No. 12-09-09812
Appeal No. 01-13-00920

1

## STATEMENT OF THE CASE

Petitioner was charged by indictment with Possession with Intent to Deliver or Manufacture a Controlled Substance. C.R. 0.20. The indictment also had three enhancement paragraphs alleging that Petitioner had three previous felony convictions.

Petitioner entered a plea of not guilty, but on August 21.2013. a jury found him guilty after his trial in the 221st District Court of Montgomery County. R.R V.3 0 11. C.R. 0 85. After a punishment trial the jury found all three enhancement paragraphs true and sentenced Petitioner to 65 years in the Texas Department of Criminal Justice. C.R p 87.

Petitioner filed a written Notice of appeal on Septem 19. 2013 C.R. 0. 139.

## PROCEDURAL HISTORY

The judgment of Petitioner's conviction was entered on August 21 2013 Petitioners notice of appeal was timely filed. On March 31, 2015, the first District Court of Appeals issued an published opinion by Justice Michael Massengale Panel consist of Justices Keyes, Bland, and Massengale, affirming Petitioner's conviction Motion for Rehearing filed May 10, 2015, and denied June 23, 2015.

## GROUND FOR REVIEW

1. Did The Appeals court err in finding that the Evidence was legally sufficient to sustain a conviction because evidence was insufficient to find that Petitioner knowingly possessed Phencyclidine with the Intent to Deliver or Manufacture?

2. Did The Appeals court err in finding that the search and seizure of the petitioner's mail a violation of his 4th Amendment rights? if searched and seized without seeking a warrant.

3. Did The Appeals court err in finding that highly prejudicial and inflamatory hearsay and unauthenticated information downloaded from a cell phone erroneously admitted by the trial court was harmless.

2

# ARGUMENT
## Ground for Review Number One

Did the Appeals court err in finding that the evidence was legally sufficient to sustain a conviction because evidence was insufficient to find that petitioner knowingly possessed Phencyclidine with Intent to Deliver or Manufacture. The court of appeals has rendered an opinion in conflict with the rationale of this court in Roberson V. State, 80 S.W. 3d 730 (Tex. App - Houston (1 Dist) 2002), also see Evans V. State, 185 S.W. 3d 30 (Tex. App - San Antonio 2005), and Poindexter V. State. 115 S.W. 3d 295 (Tex. App - Corpus Christi 2003), also see Stephen V. State. 369 S.W. 3d 178 (Tex. App -Texarkana 2008 pet ref'd).

TEXAS RULES OF APPELLATE PROCEDURE RULE 66.3(A)

Petitioner was called by an postal inspector on January 5, 2012 to come receive a package, that was sent from Longbeach, California, to the Woodland, Texas, the first court of appeals affirmed the conviction in this case despite the overwhelming evidence that the postal inspector contacted the petitioner in order to bring this particular package into his possession. RR V3 pg 5. Petitioner was not aware of what he was receiving, because the sent mailed package was concealed and not reviewable. RR V3 pg 13. There is no sufficient evidence to prove petitioner was looking for this sealed mailed package prior to the arresting date (JANUARY 5, 2012).

Further more, petitioner never open the sealed mailed package, the evidence is clearly insufficient to prove petitioner unlawfully possessed a controlled substance, or even knew he was in possession of a controlled substance if he never opened the mailed package. RR V3 pg 54.

TEX. PENAL CODE & 6.03 (A) is presented in the state's opinion to show Petitioner had the intent and consciousness to transfer or deliver this sealed mailed package. (opinion. pg 10-11). There's no investigatory evidence beforehand, to prove petitioner had any intention to transfer the package, or any consciousness of what was within the package; Roberson V. State, 80 S.W. 3d 730 (Tex. App - Houston (1 Dist) 2002).

As in the Evans V. State case petitioner was basically in the same position, in arms length of a controlled substance and charged because of the accessible arrangements. See TEX. HEALTH & SAFETY CODE §481.112 (A); Petitioner only pick up a mailed package, the evidence is insufficient to show and prove petitioner knew what he was possessing, even if the state direct evidence just as they did in the Evans V. State case contraband was in plainview to actually reverse the charges against Evans, this case might not have been reversed if contraband was actually conceal or mailed to the address he was at.

3

# Ground for review NUMBER ONE
## CONTINUED

The accessibility of the package, and also the quantity in the package does show validity of an unlawful possession, but it does not prove petitioner was aware of what he was possessing, even with direct or circumstantial evidence because the contraband was concealed within a sealed mailed package. In the Poindexter v. State, 115 s.w. 3d 295 there was favorable light to illuminate the conviction, because contraband was found in a house Mr. Poindexter had accessibility to; same issues presented in petitioners case, because the package had petitioner name on it, and petitioner was in possession of the package, but in both cases there's no sufficient evidence to prove either one exercised controll, management, or care over the substance, and that they knew the matter possessed was contraband, especially in the petitioner argument receiving contraband in the mail system.

With all the evidence, direct and circumstantial, the state clearly did not meet the burden to prove petitioner actually had exercised control, management, or care over the substance, and that he knew the matter possessed was contraband, because petitioner never open the package. See TEXAS HEALTH & SAFETY CODE 3481.112 (A). The first court of Appeals Affirmed the conviction that petitioner had the intention on making a delivery, but the record only shows petitioner in possession of the sent mailed package for only a short time, without actually opening the package himself, there's no evidence to ~~prove petitioner~~ to prove petitioner knew what he was about to deliver, or even if it was anyone he was going to deliver the package to, he never knew what he was in possession of. the evidence was insufficient to sustain a conviction because the package was sealed to the public and petitioner eye sight.

The First court of Appeals are in conflict with Stephen V. State. 269 s.w.3d 178 (Tex. App - Texarkana 2008 pet ref'd), and should be overruled, and also the reflection of all the other case should be closely examine to give petitioner a fair and justible consideration.

4

## Ground for review Number two

Did the Appeals court err in finding that the search and seizure of Petitioner mail a violation of his 4th Amendment rights if petitioners sealed mailed package was searched and seized without seeking a warrant?

The first Court of Appeals did Not render the opinion or comment to the Motion for Rehearing on June 23, 2015; leaving petitioner without any instruction to present the T. R. APP. Rule 66.3

Petitioner presented A MOTION FOR REHEARING May 10, 2015; and it was denied June 23, 2015, petitioner is not able to attack the validity of the first court of Appeals denial. Petitioner asks the Criminal Court of Appeals to examine the Ground given in this P.D.R from the Motion for rehearing. Supportive cases : (U.S. V HERRERA C.A.10 (N.M) 810 F 2d 989) See U.S v. Leeuwn, 397, U.S. 249, 251. 90 S.Ct. 1029, 25 L.ED. 2d 282 (1970) U.S. V. Jacobson 466 U.S. 109, 114, 104 S.ct 1652, 80 L.ED. 2d 85 (1984) Robbin v. California 453 U.S. 426-427, 101 S.ct at 2845-2846

5

# Ground for review Number three

Did the court of Appeals err in finding that highly prejudicial and inflamatory hearsay, and unauthenticated information downloaded from a cell phone, erroneously admitted by trial court was harmless? Whether a court of Appeals' decision conflicts with another court of appeals decision on some similar issues is what petitioner is requesting the court of Criminal appeals to examine: Dorsey v. State, 54 s.w.3d at 421-22; also see, Murray v. State, 804 s.w.2d 279.283, and May v. State, 784 s.w.2d 494; also see, Tienda v. State, 358 s.w.3d 633.

Rule 66.3(A)

"Hearsay" is a statement, other than one made by the declarant while testifing at trial or hearing, offered in evidence to prove the matter asserted Tex.R.Evid. 801(d). This includes both oral and written expressions. Tex.R.Evid. 801(a)(1) "An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay."

Statements that constitute admission by a party opponent are also not hearsay. Tex.R.Evid 801(e)(2). "A declarant is a person who makes a statement." Tex.R. Evid 801(b) "A 'statement' is (1) an oral or written verbal expression or (2) non-verbal conduct of a person, if it is intended by him as substitution for verbal expression.(opinion pg.20)    HEARSAY OBJECTION: There is a conflict with the first court of Appeals opinion and Murray v. State, 804 s.w.2d at 284. Petitioner objected the admission of certain evidence as hearsay. Petitioner challenges the photographs of shipping labels found on the cell phone, text messages found on the cell phone, names of banks, and amount of money, and account numbers, and the testimony of Deputy Martin testifying about bank deposit slips found in the car January 5. 2012 the actual arresting date. Murray. 804 s.w.2d at 284 explains that computer stored data is hearsay whereas computer self-generated data is not; there was not any self-generated information on the cell phone to connect petitioner to a sealed mailed package, but the contents of the cell phone was entered into evidence to prove the matter asserted. Photographs of shipping labels found on the cell phone more than 30 days beforehand without any revelance, and this is all information presented to a jury prior to petitioner's arrest; in the May v. State case, there were some simular illustration, that petitioner points out, that illuminate the inadmissible entry of evidence used against petitioner. Just a the May v. State. 784 s.w.2d 494 trial court allowed the state to introduce testimonial evidence of an intovilyzer readout to prove May's inebriety. The Appellant court determined that the testimony of an operator repeating information observed on a computer readout constituted inadmissible hearsay, there's nothing authentic, or self-generated about the photographs of shipping labels; only a text message printout of a sealed mailed package presented in petitioner trial to draw an assumption that there was contraband in the boxes from the text message photograph. Petitioner trial counsel objected to information offered into evidence concerning a cell phone that did not belong to him. "stating that this is all hearsay and unauthenticated information, especially the text messages on the phone, this particular information could not prove the package that came to

8

# Ground for review Number three
## CONTINUED

petitioner job location was signs of a drug ring, therefore should not have been used against him to prove the matter asserted. Deputy Martin testified in petitioner trial, about bank deposit slip that made the jury think he was a drug dealer without finding any money, something that could link petitioner to a drug package sent from california to Texas; Dorsey v. State, 24 s.w.3d 921 Noted that the case was entirely circumstantial, as there were no eye-witnesses who testified at trial. The conviction in Dorsey was reversed because court found the inadmissible hearsay testimony to be extremely prejudicial, given the state's theory of the case and the fact that it tended to negate the defensive theory offered by the defendant. Petitioners case is entirely circumstantial, just as Dorsey's case was, and the reviewing court here cannot change that fact by Deputy Martin testimony as direct evidence. The testimony here was just as prejudicial as that in Dorsey's case, this is remarkably simular.

In Petitioner case the trial court relied on circumstantial evidence, evidence that did not have any relevancy to the case. Petitioner received a package in the mail, all the evidence used against him did not prove who put the package together; the only clear evidence, was someone, used petitioner name to send the package, this was the only authenticated information. Evidence has no relevance if it is not authentically what its proponent claims it to be. Tienda at 638. Rule 901(A) of the rules of Evidence defines authentication as a " condition precedent " to admissibility of evidence that requires the proponent to make a threshold showing, that would be " sufficient to support a finding that the matter in question is what its proponent claims. A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case — Under Texas Rules of Evidence Rule 104(A). whether or not to admit evidence at trial is a preliminary question to be decided by the court. The trial court did not present any clear cut information that links petitioner to the sealed mailed package, the trial should admit proffered evidence " upon, or subject to the introduction of evidence sufficient to support a finding of " authenticity; Even after piecing all the circumstantial evidence together, nothing makes a match to show authentication. In the Tienda case, ultimately the court concluded that there was sufficient evidence to support a finding that the exhibits what they purported to be - MySpace pages the contents of which the defendant was responsible for. The first court of Appeals opinion in the authenticity of circumstantial evidence, in petitioner trial does not show a connection like Tienda v. State 358 658 (Tex. Crim. App 2012) shows the link to his murder charge. Therefore the harm in allowing the unauthenticated information to be affirmed should be scrutinized closely by the criminal court of appeals.

7

## PRAYER FOR RELIEF

For the reason stated, the Petitioner was denied a fair trial in cause No. 12-09-09812. WHEREFORE, PREMISES CONSIDERED, Petitioner humbly prays that the Honorable Texas Court of Criminal Appeals would grant a Petition for Discretionary Review, and remand to the first in regards of the 4th Amendment, with instruction to conduct a "SOME HARM" analysis rather than a "egregious harm" analysis, and to further consider the merits of Petitioner's pro-se arguments.

Respectfully submitted

*Lydell A. Jones*

Lydell Anton Jones
(#1902538) Coffield Unit (Z-219)
2661 FM 2054
Tennessee Colony, TX 75884

## CERTIFICATE OF MAILING

I, Lydell Anton Jones, #1902538 swear under penalty of perjury that on this 21st day of September 2015, I placed the foregoing attached PRO-SE PETITION FOR DISCRETIONARY REVIEW, in a postage prepaid envelope addressed to: THE HONORABLE ABEL ACOSTA, Clerk of the Court of Criminal Appeals / First Court of Appeals: Christopher A. Prine (Clerk)

P.O. BOX 12308 / 301 Fannin Street
Austin, TX 78711 / Houston, TX 77003-2066

*Lydell Jones*

Lydell Anton Jones

## CERTIFICATE OF SERVICE

I, Lydell Anton Jones, #1902538 swear under perjury that on this 21st day of September 2015, I placed the foregoing attached PRO-SE PETITION FOR DISCRETIONARY REVIEW, this is a certified true and correct copy of the PDR properly delivered to the Clerk representing the Court of Criminal Appeals, THE HON. BRETT W. LIGON, District Attorney Montgomery County, Texas, and Mary Nan Huffman, Assistant District Attorney Montgomery County, TX and the clerk of the First Court of Appeals: Christopher A. Prine

COURT OF CRIMINAL APPEAL
ABEL ACOSTA (CLERK)
P.O. BOX 12308
Austin, TX 78711

MONTGOMERY COUNTY, TEXAS
207 W. Phillips Second Floor
Conroe, TX 77301

THE STATE PROSECUTING ATTORNEY
P.O. BOX 12405
Austin, TX 78711-2405

First Court of Appeals
301 Fannin Street
Hou, TX 77002-2066

*Lydell A. Jones*

Lydell Anton Jones

8

Opinion issued March 31, 2015



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00920-CR

---

**LYDELL ANTON JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 221st District Court**
**Montgomery County, Texas**[*]
**Trial Court Case No. 12-09-09812-CR**

---

[*] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this court. *See* Misc. Docket No. 13–9152 (Tex. Oct. 17, 2013); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

## OPINION

A jury convicted appellant Lydell Anton Jones of possession with intent to deliver or manufacture a controlled substance, phencyclidine ("PCP"), in an amount greater than 400 grams. *See* TEX. HEALTH & SAFETY CODE § 481.102(8) (Penalty Group 1); *id.* § 481.112(a) & (f) (Offense: Manufacture or Delivery of Substance in Penalty Group 1). The jury found enhancement allegations in the indictment to be "true," specifically that Jones previously had been convicted of possession of controlled substance with intent to deliver, possession of marihuana, and unauthorized use of a motor vehicle. The jury assessed punishment at 65 years in prison, and Jones appealed. In his first two issues, Jones challenges the trial court's admission of evidence and the sufficiency of the evidence to support the conviction. In his third issue, he argues that he received ineffective assistance of counsel.

Finding no reversible error, we affirm.

### Background

A United States postal inspector suspected that a package contained a controlled substance. The package was shipped by Priority Mail and addressed to "Lydell Jones" at the address of a restaurant in The Woodlands. The postal inspector notified local law enforcement, initiating a narcotics investigation conducted with the joint cooperation of the postal inspector, the Houston Police

Department, and the Montgomery County Sheriff's Department. The postal inspector contacted Jones by telephone, and he agreed to pick up the package at the restaurant the following day. The next day, the postal inspector delivered the box to the restaurant, and then she waited in the parking lot with HPD officers in unmarked patrol cars. When Jones arrived and took possession of the box, the officers contacted Montgomery County Sheriff's Deputy S. Martin, who was in a marked patrol car nearby, and they described Jones's car to him. Deputy Martin followed Jones for a short while before stopping him for a suspected window-tint violation.

When Jones pulled over, Deputy Martin's dashboard-mounted camera was engaged, and a recording was made. Deputy Martin determined that Jones was driving while his license was suspended and that the window tint on the car exceeded that allowed by law. Jones consented to a search of the car, stating that it was not his car, and he did not believe there was contraband or weapons inside, but because it was not his he could not be certain.

Deputy Martin found the suspicious package on Jones's backseat, in plain view. It was a box from a hardware store ("a Home Depot box"), prepared for shipment through the mail, with Jones's name written in several places and addressed to him at the restaurant address. The return address indicated the sender as "Katrina Jones" in Long Beach, California. Deputy Martin also found "several

deposit slips for different banks" in the center console. He testified that he saw deposit slips from "Bank of America and Chase," with two indicating deposits in the amounts of $4,000 and approximately $3,500. He also found "a stack of several blank deposit slips." Martin did not collect or retain the deposit slips.

Jones told Deputy Martin and the other officers on the scene that he worked for both the restaurant and a barber shop. He said the package contained "perm" solution, and he denied consent to search it. But Martin's suspicion about the package had been aroused by a combination of factors. The investigation had been initiated by the postal inspector's tip. The return address was from Long Beach, California, and Martin knew that California was a primary source for exporting illegal drugs, which are frequently sent through the mail. In addition, he found it suspicious that perm solution would be shipped "in a Home Depot box" and addressed to Jones at the restaurant, not the barber shop. According to Deputy Martin, "Nothing he was telling me was adding up or making any sense."

Deputy Martin arrested Jones for driving while his license was suspended when he had a prior conviction for the same offense. Because he was not certain whether he had sufficient justification to conduct a warrantless search of the box, Deputy Martin called for a K-9 unit. When the dog arrived, it alerted on the box, indicating the presence of an illegal substance. Deputy Martin and the other officers then opened the box. Inside they found another sealed cardboard box

which held three 32-ounce bottles and one 20-ounce bottle, each filled with a yellowish liquid and packaged separately in vacuum-sealed plastic bags. Deputy Martin later testified that narcotics traffickers often use vacuum-sealed bags to mask odors and avoid detection by drug-sniffing dogs. He field-tested the liquid, which had a strong odor, and detected PCP. Jones was charged with possession with intent to deliver PCP, a controlled substance, in an amount of 400 grams or more.

Jones had a mobile telephone with him at the time of his arrest. Deputy Martin testified that it rang continually during their encounter. The phone was collected as evidence and turned over to Montgomery County Sheriff's Detective M. Pieper, who specialized in gathering forensic evidence from electronic devices. She obtained a search warrant for the contents of the phone and extracted text messages, photographs, call lists, and contact lists from it.

At trial, Jones objected to the admissibility of the evidence obtained from the phone, arguing that it was unauthenticated hearsay. He also asserted that the phone belonged to his mother-in-law, Pearly Green, who went by the nickname "Baby." The State argued that Jones's possession of the phone at the time of the arrest, his use of it at the scene of the traffic stop, and certain information on it showed that it was his phone and satisfied the authentication requirement. The State further argued that text messages shown to be sent from "Me," i.e. the phone's user, were

statements against Jones's interest or statements of a party opponent and therefore not hearsay. Finally, the State argued that the other text messages and photographs were not hearsay because they were not offered to prove the truth of the matter asserted but to show the context for Jones's responsive messages and to show a course of conduct. The trial court overruled Jones's objection, holding that any questions about who sent or received the texts went to the weight of the evidence, not its admissibility.

Detective Pieper testified that she recovered several text messages from "Kool" originating from a phone number with a 562 area code, which is in southern California. The text messages dated from approximately two months before the arrest. Among these were approximately 25 text messages between "Kool" and "Me." Many of these consisted of ten-digit numbers or phone numbers, bank names, names of people, and amounts of money. Two messages from "Kool" to "Me" addressed the recipient by the name "James."

The mobile phone's contact list included entries for "Baby" and "James Green," but it did not include an entry for Jones. The call log showed two incoming phone calls from "James Green," but with different associated phone numbers. The phone also contained photographs of shipping labels—one addressed to Jones at the restaurant and the other addressed to James Green. Detective Pieper

6

did not verify whether the phone numbers actually belonged to the people identified by name in the mobile phone records.

A forensic scientist with the Texas Department of Public Safety crime laboratory in Houston analyzed the liquid seized from the package delivered to Jones. The total weight confiscated was 2,643 grams, and all four bottles contained PCP, a controlled substance in Penalty Group 1. *See* TEX. HEALTH & SAFETY CODE § 481.102(8). P. Cash, the commander of the narcotics division for the Montgomery County Sheriff's Department testified about the nature, potency, and harmful effects of PCP. According to Commander Cash, most of the PCP in the United States is made in clandestine labs in Compton, California and shipped throughout the country. It can be made in different concentrations, and it is sometimes shipped in concentrations meant to be diluted before sale to end users. Cash said: "We have seen a quart make gallons." He testified that it is commonly shipped by way of the U.S. Postal Service and law enforcement sometimes receives tips from suspicious postal workers. He testified that the amount of PCP confiscated from Jones was not an amount for personal use because it was "way too much."

Pearly "Baby" Green testified that the mobile phone belonged to her, not Jones. She testified that several people had access to the phone, including her

daughter, her son James Green, and others. She said she "never" let Jones use her phone except for the one day he picked up the package.

James Green testified that he owned the car that Jones was driving on the day he was arrested. According to him, the postal inspector called him on his phone looking for Jones, who later left with his mother's phone to pick up the package. He also said that Jones never before had used his mother's phone. He said that his mother did not know Kool, but he acknowledged numerous text messages on the phone from Kool.

The videorecording made at the scene of the traffic stop was admitted into evidence in both its original form and a redacted version which excluded statements Jones made at the scene about his prior criminal record. During the trial, there were technical difficulties with the redacted version, and the record indicates that portions of the original version were played.

The jury found Jones guilty of possession with intent to deliver more than 400 grams of PCP, and it assessed punishment at 65 years in prison. Jones appealed.

## Analysis

On appeal, Jones raises three issues. He argues that the evidence was insufficient to support the conviction because it did not show that he knew what was in the box or that he intended to "deliver" it to others. He also challenges the

admission of evidence obtained from a mobile phone that was in his possession at the time of his arrest and the admission of testimony about bank receipts found in his car. Finally, he argues that he received ineffective assistance of counsel during the guilt-or-innocence phase of trial because his counsel did not object to evidence that he refused consent to search the box and to the admission of the unredacted version of the video made at the time of his arrest.

## I.     Sufficiency of the evidence

In his second issue, Jones argues that the evidence was insufficient to show that he knowingly possessed PCP with intent to deliver it. In particular, he argues that there is no evidence that he knew what was in the box because there was no odor emanating from it that would indicate it contained an illegal substance. He argues that he might have been expecting PCP, but he could have been swindled or that he could have been expecting some other illegal product like marijuana or hair products not approved for use in this country. He further argues that there was no evidence of his intent to deliver the PCP because the arrest location was not suspicious, there was no evidence as to whether he used drugs, and there was no evidence of cash or drug paraphernalia found on him at the time of his arrest. He argues that he cannot be held accountable for intending to deliver a substance that was unknown to him.

When evaluating a legal-sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The standard is the same for both direct and circumstantial evidence cases. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Pointe v. State*, 371 S.W.3d 527, 531 (Tex. App.—Beaumont 2012, no pet.).

To prove unlawful possession of a controlled substance, the State must prove that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.); *see also* TEX. HEALTH & SAFETY CODE

10

§ 481.002(38) (defining possession as actual care, custody, control, or management). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE § 6.03(a). "'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . ." TEX. HEALTH & SAFETY CODE § 481.002(8). Thus, the State in this case was required to prove that Jones exercised control, management, or care over the PCP, that he knew that the substance in the box was PCP, and that he had a conscious objective or desire to transfer it to another person. However, the State was entitled to rely upon circumstantial evidence because it "is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales*, 414 S.W.3d at 742 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Poindexter*, 153 S.W.3d at 405–06. However, presence or proximity, when combined with other evidence, either direct or circumstantial, may be sufficient to establish the element of possession beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). The Court of Criminal Appeals has recognized numerous "links" as non-exclusive factors that may establish

11

possession, including whether: (1) the defendant was present when a search was conducted; (2) the contraband was in plain view; (3) the defendant was in proximity to and accessible to the contraband; (4) the defendant was under the influence of narcotics when arrested; (5) the defendant possessed other contraband when arrested; (6) the defendant made incriminating statements when arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of contraband; (10) other contraband or drug paraphernalia was present; (11) the defendant owned or had the right to possess the place where the contraband was found; (12) the place where the contraband was found was enclosed; (13) the defendant was found with a large amount of cash; and (14) the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. These factors do not comprise "an independent test of legal sufficiency." *Id.* at 161–62 n.9. Rather, the key legal question is whether the circumstances, in conjunction with a defendant's presence, justify a conclusion that the defendant knowingly possessed the contraband. *Id.* "It is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Id.* at 166.

Jones's appellate argument centers on the lack of the kinds of links identified in *Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006). Jones is correct that some of those factors are absent in this case. For example, he was not under the influence of narcotics when he was stopped, he was not in possession of

other contraband or a large amount of cash, and he did not attempt to flee. *See Evans*, 202 S.W.3d at 162 n.12. But the "absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Other circumstantial evidence shows that Jones exercised control, management, or care over the PCP and that he knew what it was. *See Poindexter*, 153 S.W.3d at 405. Jones was in possession of a box, addressed to him at a restaurant where he said he worked. He went to the restaurant to pick up the box after being contacted by the U.S. Postal Service. He possessed a mobile phone on which there was a photograph of a similar box addressed to him at the same location, indicating that a similar shipment had been made in the past. The text messages were circumstantial evidence that Jones acted with knowledge and intent because they showed a course of conduct in which large sums of money were transferred to various bank accounts in exchange for the shipment of packages from California to Texas. The text messages predated Jones's arrest by a few months, which shows knowledge or lack of surprise.

Moreover, viewing the evidence in the light most favorable to the verdict requires us to consider this evidence in conjunction with other evidence introduced at trial, such as Commander Cash's testimony that most of the PCP in the United

13

States is made in California and shipped to other locations for distribution, that it can be made and shipped in concentrations meant for later dilution, and that the amount of PCP found in the box addressed to Jones was "way too much" for personal use. Other circumstantial evidence also includes Deputy Martin's testimony about the bank deposit slips found in the car that Jones was driving. The receipts showing the deposit are consistent with the text messages; the blank deposit slips are circumstantial evidence of an ongoing operation in which deposit slips would be used. Finally, we cannot ignore the fact that the box actually contained 2,643 grams of PCP, which Cash testified was more than a useable amount. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Jones possessed PCP in an amount greater than 400 grams with intent to deliver it. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Merritt*, 368 S.W.3d at 525. Accordingly we overrule Jones's second issue.

## II.    Evidentiary challenges

In his first issue, Jones argues that the trial court erred by admitting "unauthenticated information" downloaded from the mobile phone that was in his possession when he was arrested. He contends the phone was not his and the evidence did not show that he was responsible for the information on it. He also

14

argues that text messages from that phone and testimony from the arresting officer regarding bank deposit slips found in the car were inadmissible hearsay.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). As with other types of evidentiary rulings, we uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton*, 280 S.W.3d at 240 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). The test for abuse of discretion is whether the ruling was arbitrary or unreasonable. *Montgomery*, 810 S.W.2d at 380. We "may *uphold* a trial court's ruling on any legal theory or basis applicable to the case." *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

## A.     Authenticity of information from mobile telephone

Jones frames his challenge to the admission of information from the phone as an issue of the evidence's authenticity. As a condition precedent to admissibility, the proponent of the evidence must satisfy the requirement of authentication by showing that "the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The question of authentication arises when the relevance of proffered evidence "'depends upon its identity, source, or connection with a particular person, place, thing or event.'" *Angleton v. State*, 971 S.W.2d 65,

70 (Tex. Crim. App. 1998) (quoting 2 Steven Goode, et al., Texas Practice Guide to Texas Rules of Evidence: Civil & Criminal § 9.01, at 191–92 (2d ed. 1993)). In performing its "gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638; *see Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd) (authentication may be shown by circumstantial evidence). It need not be proven beyond a reasonable doubt, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity. *Manuel*, 357 S.W.3d at 74. Moreover, in light of the diverse variety of electronic evidence, "as with the authentication of any kind of proffered evidence, the best or most appropriate method for authenticating electronic evidence will often depend upon the nature of the evidence and the circumstances of the particular case." *Tienda*, 358 S.W.3d at 639.

16

The text messages admitted in this case show conversations between people sending messages from various phone numbers. The senders were identified by names entered into the contact list. The user of the phone in question was identified only as "Me." In the trial court Jones argued that he did not own the phone in question. Similarly, on appeal, he argues that he "could have also been using someone else's phone." Thus, Jones argues the State failed to establish that he was responsible for all the pictures, text messages, contacts, and other information found on the phone. In other words, he contends that there was insufficient evidence to show that he was the "Me" identified in the text messages, and therefore the court erred by admitting all of the evidence obtained from the mobile phone.

The State argued that the evidence showed Jones's connection to the mobile phone: he was in possession of it at the time of arrest, he answered it and spoke to an acquaintance while detained by law enforcement officers, and it rang continually thereafter during the traffic stop. At one point in the video, Jones referred to the phone as his. At trial, Pearly "Baby" Green testified that the phone was hers and that she allowed her son James Green to use it as well. But the phone's contact list included entries for both "Baby" and James, identifications that would be unnecessary if the phone belonged to either of them. The phone also included photographs of Jones, and photographs of shipping labels on boxes,

17

including one addressed to Jones at the same restaurant where he picked up the box in this case.

Jones relies on *Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012), in which the Court of Criminal Appeals considered whether the trial court erred by admitting evidence from a social-networking profile that the State contended was created by the defendant. 358 S.W.3d at 634. In *Tienda*, the defendant was charged with murder resulting from a multiple-car shootout. *Id.* Evidence of his involvement in the shootout was inconsistent, but the State proffered evidence from several social-networking accounts that it believed were created by the defendant and which included incriminating information. *Id.* at 635–36. The profiles were not created with the defendant's legal name, and his theory appeared to be that he did not create the profiles and they should not be used against him. *See id.* But the profiles did reflect his nicknames, email addresses associated with him, photographs of a person who bore a resemblance to him, and specific information about the charged offense and his co-conspirators. *Id.* at 636. The Court of Criminal Appeals held that there was sufficient circumstantial evidence connecting the defendant with the social-networking evidence to establish a prima facie case that he was responsible for the content. *Id.* at 642.

Jones argues that there is less evidence to support authentication in this case than there was in *Tienda*. For example, he argues that there was no evidence of the

account holder for the phone, who paid for the account, when it was opened, or the identity of the pets shown in some of the photographs. He also argues that a photograph on the phone of a package addressed to James Green and a text message to "Me" that stated "James Holla at me" show that James Green "was in charge of the phone." However, the proponent of the proffered evidence need not eliminate all other possibilities inconsistent with authenticity. *Manuel*, 357 S.W.3d at 74. The question is whether the evidence would support a determination by a reasonable jury that the evidence is what it is purported to be. *Tienda*, 358 S.W.3d at 638.

Here the State offered the evidence from the phone as information and content that was within Jones's control. In support of that, the State relied on circumstantial evidence connecting Jones to the phone at the time of his arrest. This included Jones's possession and use of the phone when stopped by Deputy Martin, the identification of phone numbers in the phone suggesting that it was used to communicate with "Baby" and with James but not with him, photographs showing a shipping label addressed to him at the restaurant where he worked, and text messages regarding bank transactions consistent with bank receipts found in the car he was driving. Though individual pieces of the circumstantial evidence, standing alone, could have led to a different inference, taken together, we conclude

19

that the evidence supported a prima facie case that the phone and its contents belonged to Jones. *See Tienda*, 358 S.W.3d at 638; *Manuel*, 357 S.W.3d at 76.

## B. Hearsay objections

Jones also objected to the admission of certain evidence as hearsay. In particular, he challenges photographs of shipping labels found on the mobile phone, one addressed to himself and another addressed to James. He also challenges the admission of text messages that stated the names of banks, amounts of money, and what appeared to be account numbers. Finally, Jones argues that the court erred by permitting Deputy Martin to testify about bank deposit slips he found in the car.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). This includes both oral and written expressions. TEX. R. EVID. 801(a)(1). "An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay." *Stafford v. State*, 248 S.W.3d 400, 407 (Tex. App.—Beaumont 2008, pet. ref'd) (citing *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999)). A statement is not hearsay if its relevancy does not hinge on its truthfulness. *Johnson v. State*, 425 S.W.3d 344, 346 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

20

Statements that constitute admissions by a party opponent are also not hearsay. TEX. R. EVID. 801(e)(2). These include a party's own statement, a statement that he has adopted or in which he has manifested a belief in its truth, and a statement made by a co-conspirator during the course and in furtherance of the conspiracy. TEX. R. EVID. 801(e)(2)(A), (B), (E); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

1.  ***Photographs of shipping labels.***—With respect to the photographic evidence from the phone, Jones argues that it was used by the State "to offer circumstantial evidence that the packages were being shipped from California to Appellant and James Green." The photographs show the recipient's name and address but not the sender's name and address. However, at trial the State offered photographs of the box found in this case, including labels showing it originated in Long Beach, California. These photographs were admitted without objection. Thus, even if the label information were hearsay, its admission would be harmless because substantially the same evidence was admitted elsewhere without objection. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

2.  ***Text messages.***—Jones challenges the admission of text messages on hearsay grounds because they stated the names of banks, amounts of money, and what appeared to be account numbers. He contends that these text messages were hearsay because they were "out of court statements meant to prove that large

21

amounts of money were being sent or received and that the holder of the phone had something to do with these movements."

The trial court held a hearing outside the presence of the jury to consider the admissibility of the text messages and other information obtained from the phone. The State identified the following text messages as being of primary interest:

- Exhibit 25. On October 6 at 4:25 PM, from "Kool" to "Me" stating, "Wells Fargo Jermaine Dickson 2936574421 $4000."

- Exhibit 26. On October 6 at 4:26 PM, from "Kool" to "Me" stating, "Bank of America Maurice Kelly 442275257 $4000."

- Exhibit 27. On October 24 at 12:00 AM, from "Kool" to "Me" stating, "Wells Fargo Jermaine Dickson 2936574421 $4000 Bank of America Alisha Franklin 2441641378 $3000 Bank of America Maurice Kelly 442275257 $5150"

- Exhibit 28. On November 2 at 4:10 PM, from "Kool" to "Me" stating, "404925799 Takeshia BRYANT"

- Exhibit 29. On November 2 at 4:23 PM, from "Kool" to "Me" stating, "Bank of America Takeshia Bryant 0192175686 $3800 Chase Bank Takeshia Bryant 404925799 $3800"

- Exhibit 30. On November 2 at 4:35 PM, from "Me" to "Kool" stating, "Branch number 281 931 6698 bank of America"

- Exhibit 31. On November 2 at 4:48 PM, from "Kool" to "Me" stating, "Takeshia Bryant 3032990404"

- Exhibit 32. On November 2 at 5:04 PM, from "Me" to "Kool" stating, "Branch number 281 591 5918 chase"

- Exhibit 33. On November 2 at 8:56 PM, from "Kool" to "Me" stating, "James holla at me!"

- Exhibit 34. On November 4 at 3:41 PM, from "Kool" to "Me" stating, "B of A Alisha Franklin 2441641378 4270 B of A Lasonia Scott 0192810314 5220"

- Exhibit 34. On November 4 at 4:22 PM, from "Kool" to "Me" stating, "In the air!"

- Exhibit 34. On November 4 at 5:07 PM, from "Kool" to "Me" stating, "How long will you be cause they got to have time to verify it before they close down their?"

- Exhibit 34. On November 4 at 5:08 PM, from "Me" to "Kool" stating, "We at the bank of america now."

- Exhibit 34. On November 4 at 5:09 PM, from "Kool" to "Me" stating, "Bet."

- Exhibit 35. On November 4 at 5:11 PM, from "Kool" to "Baby Voice Mail" marked as "*Urgent*" and showing photographs of a shipping label bar code and label addressed to "James Green" in Spring, Texas.

- Exhibit 36. On November 4 at 5:12 PM, from "Kool" to "Baby Voice Mail" marked as "*Urgent*" and showing photographs of a shipping label bar code and label addressed to Jones.

- Exhibit 37. On November 4 at 5:28 PM, from "Me" to "Kool" stating, "Bank of america branch number is 713 684 4800."

- Exhibit 38. On November 4 at 5:51 PM, from "Kool" to "Me" stating, "Bank of America Lasonia Scott 0192810314 $3490."

- Exhibit 39. On November 9 at 11:11 AM, from "Kool" to "Me" stating, "Chase Bank Joshua Gilmore 959959156 $5100 Bank of America Keyonta Glasper 2463214208 $5100 Jermaine Dickson Chase Bank 411528040 $4000 Shale."

- Exhibit 39. On November 9 at 11:11 AM, from "Kool" to "Me" stating, "thia Franklin Chase Bank 4376630012 $1750."

23

- Exhibit 40. On November 9 at 12:49 PM, from "Kool" to "Me" stating, "Bank of America Maurice Kelly 442275257 $4280 Chase Maurice Kelly 991942954 $4280 Chase Jermaine Dickson 411528040 $550."

- Exhibit 40. On November 9 at 4:37 PM, from "Kool" to "Me" stating, "How much did you deposit?"

- Exhibit 41. On November 23 at 7:08 PM, from "Me" to "Kool" stating, "Big bro my phone went dead but i went to the other bank wells fargo in randalls they were close and I was on time way be fo six but they must have closed (2/2) at 3.00 pm."

- Exhibit 42. On November 25 at 5:45 PM, from "Kool" to "Me" stating, "Latonya Scott 7092160782 $3525."

- Exhibit 42. On November 25 at 5:52 PM, from "Me" to "Kool" stating, "Branch number is 281 465 2200 wells fargo."

- Exhibit 43. On November 26 at 2:30 PM, from "Kool" to "Me" stating, "James holla at me bro!"

At trial, the State argued that the statements from "Me" to "Kool" were admissions of a party opponent and therefore not hearsay, and that "the other text messages would be entered to give context" to the statements. The trial court agreed and admitted the messages as such.

As we have explained, the State presented some evidence indicating that Jones was responsible for the contents of the phone. Jones was apprehended just after picking up a box containing PCP that was mailed to him at the address of a restaurant. The text messages showed similar packages addressed to both Jones and James Green. Two text messages addressed to "Me" included text addressing

"James." When Jones was arrested, he used the phone and identified it as his own. However, the text messages identified other people by name and, along with the testimony about the bank deposit receipts found in the car, showed a course of conduct regarding depositing of large sums of money in various bank accounts consistent with a drug dealing operation. Because an admission of a party opponent includes both a party's statements and statements made by a co-conspirator, even if the jury believed that some of the messages sent by "Me" were made by James Green, they would nevertheless be admissions of a party opponent. *See* TEX. R. EVID. 801(e)(2)(E). This same reasoning similarly applies to the text messages that came from "Kool."

At trial, the State also sought to admit other text messages, including those from "Kool" to "Me." In response to Jones's hearsay objection, the State argued that it was not offering these messages for the truth of the matters asserted. Rather, it argued that the other text messages were admissible to "give context" to Jones's statements and to show what he did in reaction to them. Although the State does not reurge this argument on appeal, it is a valid alternative reason upon which the trial court could have admitted the challenged text messages. *See Martinez*, 91 S.W.3d at 336 (appellate court may uphold trial court's ruling on any legal theory applicable to the case).

The Texarkana court of appeals addressed a similar issue in *Woolverton v. State*, 324 S.W.3d 794 (Tex. App.—Texarkana 2010, pet. ref'd), in which the defendant challenged the trial court's admission of a drug-ledger journal. 324 S.W.3d at 796. The trial court found that the drug ledger was not hearsay because it was not offered to prove the truth of the matter asserted and admitted it over the defendant's hearsay objection. *Id.* at 800–01. The Texarkana court noted the novelty of this particular issue and looked to federal precedent regarding the admissibility of drug ledgers. *Id.* at 801. Several federal courts that had addressed a similar issue determined that similar drug ledgers were offered as evidence of the drug trade, or as a "tool of the trade," rather than as evidence that particular individuals owed money. *Id.* Similarly, the Texarkana court held that the trial court correctly admitted the drug ledger because it was "a 'tool of the trade' and . . . an item commonly associated with the practice of trading in illegal narcotics." *Id.* at 801. The court of appeals concluded that the ledger was not offered to prove the truth of the matters contained therein because it was not "used to prove particular drug transactions that were elements of extraneous crimes or of any type of drug conspiracy." *Id.* at 801–02.

*Woolverton* is analogous to this case. Here, the text messages were not offered to show the truth of the matters asserted because they were not used to prove that particular amounts of money were deposited in particular accounts. *See*

*Johnson*, 425 S.W.3d at 346. The text messages showed a course of conduct preceding the arrest in this case in which large sums of money were transferred to various bank accounts in exchange for the shipment of packages from California to Texas. The relevance of this evidence as circumstantial proof that Jones engaged in drug transactions was not affected by the truthfulness of the specific messages, i.e., whether the phone numbers shown in the text messages actually belonged to the people and banks as stated or whether Jones was actually at the bank at the time he said he was there. As in *Woolverton*, the text messages were not used to prove particular earlier drug transactions or that Jones had committed any extraneous crime. The text messages, taken as a whole, were circumstantial evidence of whether Jones acted with knowledge and intent. Accordingly, we conclude that the text messages were not hearsay, and we hold that the trial court did not abuse its discretion in admitting this evidence. *See Woolverton*, 324 S.W.3d at 801–02.

3. ***Testimony about bank deposit slips.***—In addition to challenging the court's admission of evidence from the mobile phone, Jones argues that the court erred by permitting Deputy Martin to testify about bank deposit slips he found in the car. Deputy Martin testified that he found "several deposit slips for different banks," including Bank of America and Chase, in the center console of the car. He testified that one was for $4,000 and that he thought another was for $3,500, but he did not recall the exact amount. He also testified that there was a stack of blank

27

deposit slips as well. At trial, Jones's counsel objected to testimony about the "dollar figures" as hearsay. The trial court overruled his objection. For the same reasons why the text messages are not hearsay, this testimony was also not hearsay. Deputy Martin's testimony was not relevant for the truth of the exact amounts of the bank deposits. It was relevant as circumstantial evidence connecting Jones to the mobile phone he was using because he was driving the car where the deposit slips were found just after he picked up a box addressed to him and containing PCP. Accordingly, we hold that the trial court did not err by admitting this testimony.

Having concluded that the challenged evidence was not hearsay and that the State made a prima facie case for its authenticity, we overrule Jones's first issue.

### III. Ineffective assistance of counsel

In his third issue, Jones argues that he received ineffective assistance of counsel. He alleges that his trial counsel failed to object to evidence that he withheld consent to search the box found in his car. Jones also contends that his counsel was ineffective for waiving any objections to the admission of a video made at the time of his arrest.

Claims that a defendant received ineffective assistance of counsel are governed by the standard announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Strickland*

28

mandates a two-part test: (1) whether the attorney's performance was deficient, i.e., whether counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and if so, (2) whether that deficient performance prejudiced the party's defense. 466 U.S. at 687, 104 S. Ct. at 2064. "The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim." *Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)); *accord Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. There is a presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id.* at 689, 104 S. Ct. at 2065. In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide reasonably effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Limitations of the record often render a direct appeal ineffective to adequately raise a claim of ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Critically, "[a]n ineffective-assistance claim must be firmly founded in the record and the record must

29

affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *accord Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Therefore, when the record is silent as to trial counsel's strategy, we will not conclude that defense counsel's assistance was ineffective unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

An error prejudicial to a criminal defendant is one that had an effect on the judgment. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. A defendant need not establish such an effect by a preponderance of the evidence but need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.    Withholding consent to search the box

Jones argues that by refusing to consent to the search of the box, he was exercising a constitutional right to be free from unreasonable searches and seizures and his invocation of this constitutional right should not have been used against him as evidence of guilt. His trial counsel failed to object to the video showing his

refusal to consent, Deputy Martin's testimony about it, or the prosecutor's closing argument emphasizing it.

Jones argues that it is improper to admit evidence of a defendant's refusal to consent to a search, and therefore his trial counsel was ineffective for failing to object to such evidence. He relies on authorities indicating that a trial court errs by admitting evidence that a defendant refused to consent to a search. *See Powell v. State*, 660 S.W.2d 842, 845 (Tex. App.—El Paso 1983, no pet.) (search of package); *Reeves v. State*, 969 S.W.2d 471, 495 (Tex. App.—Waco 1998, pet. ref'd) (search of residence). While the Corpus Christi court of appeals has held that a defense attorney rendered ineffective assistance of counsel by failing to object to evidence that the defendant refused to consent to a search of his residence, *Winn v. State*, 871 S.W.2d 756, 763 (Tex. App.—Corpus Christi 1993, no pet.), the Austin and El Paso courts of appeals reached the opposite conclusion, holding that the impropriety of admission of such evidence is not so firmly founded in the law that no competent attorney would fail to object. *Ex parte Owens*, 860 S.W.2d 727, 730 (Tex. App.—Austin 1993, pet. ref'd); *Cacy v. State*, 901 S.W.2d 691, 697 (Tex. App.—El Paso 1995, pet. ref'd).

Regardless of whether trial counsel's failure to object was error, Jones's claim that without evidence that he refused to consent to a search of the box, the jury "might certainly have reached a different result" is not firmly founded in the

31

record. *See Menefield*, 363 S.W.3d 592. The record in this case shows that trial counsel advocated for Jones by seeking appointment of an investigator, by filing a motion in limine, by pursuing his theory of entrapment, by actively participating in voir dire, by promptly filing a motion for new trial and a motion to withdraw, ensuring the timely appointment of appellate counsel. The record also reflects counsel's efforts to keep objectionable portions of the video from the jury and that the court ruled in his favor on that issue. He cross-examined the State's witnesses and presented witnesses to contradict the State's theory of the case and to present an alternative and exculpatory explanation for the evidence presented in this case.

Even if the failure to object was error, the impact of such alleged error would be only slight. Jones's denial of consent was not the only evidence that showed he was aware of the contents of the package. We have already explained, without reference to Jones's refusal to consent to search of the box, that the evidence was sufficient to support the jury's verdict in that regard. The evidence obtained from the mobile phone, the circumstances of the delivery of the package, and the quantity of PCP in the package—which exceeded an amount for personal use—all were evidence that Jones knew the package contained PCP, a controlled substance. In light of the record as a whole, we conclude that even if trial counsel's performance fell below the standard of prevailing professional norms in this regard, Jones has not shown that but for his counsel's alleged unprofessional

errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S at 688, 694, 104 S. Ct. at 2065, 2068.

## B. Admission of the unredacted videorecording

Jones also argues that his trial counsel was ineffective for failing to object to the admission of both the redacted and unredacted versions of the video of his arrest. Jones contends that the admission of both versions in conjunction with the court's instruction to the jury that "all the evidence" was before it created a risk that the jury may have viewed the unredacted video while deliberating. In his brief, Jones acknowledges that "there nothing in the record about whether the jury viewed the videos while deliberating." As such, this claim is not firmly founded in the record of this direct appeal. *See Menefield*, 363 S.W.3d at 592. Without extrinsic evidence which is not present in the appellate record, Jones is unable to show that his counsel's performance was deficient or how that allegedly deficient performance may have prejudiced his defense. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We overrule this portion of Jones's third issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).

YDELL ANTON JONES #01-13-00920

06061 FM 3054 (TDCJ #1902538)
TENNESSEE COLONY, TEXAS 75884
PETITION FOR DISCRETIONARY REVIEW (Pro-Se)

LEGAL MAIL

COURT OF CRIMINAL
APPEALS OF TEXAS
P.O. BOX 12308
CAPITOL STATION
AUSTIN, TEXAS 78711