**Opinion issued March 14, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

_____

## NO. 01-17-00717-CR

_____

### NIALLSON DORSEY PRICE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 56th District Court
### Galveston County, Texas
### Trial Court Case No. 16-CR-1082

---

## MEMORANDUM OPINION

Niallson Price was convicted of online solicitation of a minor and sentenced to six years' confinement. *See* TEX. PENAL CODE § 33.021(c). In three issues, Price contends that (1) there is legally insufficient evidence that he knowingly solicited a "minor," (2) the trial court abused its discretion in overruling his objection to and

admitting into evidence unauthenticated records of text messages between Price and the putative minor, and (3) the trial court abused its discretion in overruling his objection to and permitting the State to argue at closing that he had "no excuse" for his conduct.

We affirm.

## Background

### *Stephanie's Craiglist Ad and Price's response*

Special Agent D. Lewis is a member of the Houston Metro Internet Crimes Against Children Task Force, a multi-agency law-enforcement taskforce that conducts sting operations designed to catch sexual predators. Typically, an officer will place a personal ad on a classified advertisement website, like Craigslist or (the now defunct) Backpage. In the ad, the officer poses as a young girl seeking the company of men. When a man responds to an ad, the officer will begin communicating with the man through a messaging mobile app, like Kik Messenger or Snapchat. The officer will then indicate that his or her online female persona is a minor, and, if the conversation turns sexual in nature, the officer will lead the man to believe that the minor is alone and invite the man to an agreed-upon location to engage in some sort of sexual conduct. When the man arrives to meet the minor, he is arrested by law enforcement.

In April 2016, Agent Lewis was located at the Galveston Police Department and was involved in this type of sting operation. He posted a personal ad on Craigslist posing as "Stephanie Garcia." The ad was entitled "Galveston partyers—W4M (wherever)"[1] and stated:

> single & available looking for party plans. lookin for new friends & playmates in Galveston while our house is drying out from all the stupid flooding. no smokers but 420 is ok ;D we don't know the island stuff very well so we r lookin for safe fun & excitement! no stalkers or weird replies please. we like white wine & angry orchard. texting sucks our batteries too fast so we can kik msg after email. :)

Price responded to the ad, sending an email that said, "Let's party." Lewis, posing as Stephanie, responded: "hey whats going on? im home alone til Monday and ready to party. do u have kik messenger?" Price replied that he did have Kik and provided "Stephanie" with his Kik user name, "southTx30."

### The texts between Price and "Stephanie"

Price and "Stephanie" then began communicating with each other on Kik. They communicated on and off for between three and four hours.

Stephanie asked Price, "what ru doing this weekend? Ru married? ru in galveston or somewhere else? our aunt jsut left so we r free to party wat ru doing?" Price responded that he was single and that he was in Dickinson. He asked

---

[1]     Lewis testified that "w4m" means the sender is a woman looking for a man.

Stephanie. "How many of y'all are there? You got any pics? If y'all wanna party let me know. I can be in Galveston in 20min [and] I'm down and ready to party."

Stephanie said that she was alone at the moment, and she sent a picture of herself to Price. Price sent a picture of himself to Stephanie and asked Stephanie her age. Stephanie responded that she was 14 years old and would turn 15 in a month. Stephanie said that she was from Pasadena and rooted for the Eagles, i.e., Pasadena High School. She explained that she was staying in Galveston for the weekend while her mother remained in Pasadena to deal with some issues caused by the recent flooding.

Price then attempted to confirm that Stephanie was alone, and she confirmed that she was alone all weekend. Price asked Stephanie to send him a live picture, but Stephanie refused, stating, "you can collect boob pics on ur time." Price responded that he only wanted a picture of Stephanie's "face" because he did not want to "get in trouble" if she was "only 14-15" years old. Stephanie did not send Price a live picture.

Stephanie asked Price whether he was looking for a new girlfriend, and she told Price that she was in the market for a new boyfriend. Price responded that he did not think that Stephanie's mother would like her dating him, and Stephanie responded that her mother did not like her to date "anybody," not even boys "in

4

high school." Price asked Stephanie what kind of "men" she liked, and Stephanie responded, "duh older guys with a car."

Price reminded Stephanie that he had sent her a picture of himself, and he asked, "How old do you think I am?" Stephanie replied that she thought the picture was "cute" and that she thought he was 25 or 26 years old. Price responded that he was 30 years old, and Stephanie then said, "that is like only 10 years older than me [and] not a big deal."

Lewis testified that, when he said that Price was "like only 10 years older" than Stephanie, he was referring not to Price's statement that he was 30 years old, but to Stephanie's earlier statement that she thought Price was 25 or 26 years old. Lewis explained that there was a lag in the time of the two individuals' conversation.

Price told Stephanie that he was not "a young a** boy" who did not "know how to respect women or have fun," and Stephanie responded that "high school guys are like wimps." Price then asked Stephanie what she was going to do that night, and Stephanie responded, "so im gona meet a new guy tonight i think." Price replied that he just wanted to know that Stephanie was "real" and that he would not "get in trouble" if he came to meet her. Price said, "I got a lot to lose if I get in trouble." Price explained that the only reason he asked Stephanie for a live picture was to confirm that she was real and not a police officer. He said that he had "seen

5

that stuff in the news where cops pose as girls and then arrest guys." Price told Stephanie that she was "real cute and seem[ed] cool." But, he said, "if I got in any kind of trouble with cops I'd never get to see my son."

Stephanie then sent Price another (older) picture of herself. Price responded, "So your basically just looking for an older guy that's not far from Pasadena?" Price told Stephanie that she was "really beautiful" and that he was "down to drive to Galveston" to hang out with her. Stephanie said that would be "awesome" and asked Price what he would like to do. Price replied that he was "down for anything" and asked Stephanie what she would like to do.

At this point, the conversation turned overtly sexual in nature. Stephanie told Price that she was "not sure" what she wanted to do, but she said that she did not "do anal or any of that weird s***." Price then asked Stephanie, "But what do you like?" and "Well what do you really like?" Stephanie replied that her friend with whom she was staying was not currently with her and that they did not do "3 ways."

Stephanie said that she had "dated" two guys, one 18 years old and one 24 years old. Price asked Stephanie how many guys she had "been with." Price told Stephanie that the guys she had dated were still young and probably did not know what they were doing. He said that if Stephanie had not "tried a lot" with her previous boyfriends, then those boyfriends did not know what they were doing.

Price then asked Stephanie, "But out of what you have done so far what's your favorite," and Stephanie responded, "I like to have fun but i haven't done alot of sex stuff." Price then asked Stephanie what she liked to do for fun, and Stephanie responded that she liked rehearsing and performing on her high school drill team.

Price asked Stephanie where she was in Galveston, and she gave a general location on the Galveston Seawall. Price then told Stephanie to let him know if she wanted to "chill or meet" and that he would get ready and head down to Galveston. Later, Price again asked, "So you wanna do something?" and Stephanie replied, "its getting late ru game" Price responded that he was "game" and that he "promise[d]" that they would have "an awesome time."

When Stephanie said that she was embarrassed about mentioning her general inexperience with sex and negative experience with anal sex, Price told her, "Aww sweetheart that ain't nothing to be embarrassed about." Price said, "I told you that's just the guys fault. They were too young or inexperienced." Stephanie asked Price, "ru better at it or is ther a trick or position?" and Price said, "You gotta have a man teach you new things so you can learn and experience new things. You can't have a Lil boy teach you." Stephanie said that she guessed that she would try, and Price said, "Well I might be better at it. And there are diff positions for

7

everything." Stephanie said that she and her friend had watched a lot of "porn clips," and Price said, "If you can imagine it it can be done. You just gotta tr[y]."

Price then asked Stephanie whether she wanted to meet, and Stephanie suggested that Price come over. Stephanie said that she would have to take a shower to get ready, and Price responded, "How about we both take a shower?" Price said that they could "get clean together." Stephanie replied that she had never taken a shower with anyone but that it sounded "sexy."

Stephanie then asked Price what they could do in the shower, and Price said, "Oh I'll show you," and "There's a lot to do in the shower." Price asked Stephanie whether she had ever had sex standing up, and, when she responded that she had not, he told her that they could have sex standing up in the shower. Price said, "If you want to learn I'll show you." Stephanie then told Price that she would have to take a shower to get ready before Price arrived, and Price responded, "But that's the point of us both getting in the shower." Stephanie replied that she would take a second shower with Price. Stephanie further replied, "besides ur showing me something lol right?" and Price said, "Right."

Price asked Stephanie at which hotel she was staying, and she responded that she was staying at the Red Roof Inn. Shortly thereafter, Price said that he was in Galveston, on the seawall. Stephanie asked Price to tell her when he was in the parking lot. Price arrived at the parking lot and asked Stephanie where she was

located in the hotel. Stephanie said that she was on the fourth floor in Room 420. Price responded that he would be there shortly.

### *The arrest and search of Price*

Other officers were stationed inside the hotel room at that time. Detective J. Banks with the Galveston Police Department was surveilling the hotel from the grocery store parking lot across the street. Banks observed Price as he walked toward the hotel. Price was holding his cell phone. Price paused several times as he walked, periodically looking at his cell phone and looking around. Price appeared to be hesitant or nervous.

Price walked past Room 420, stopped near a stairwell, and continued to look at his phone. After a short while, Price returned to Room 420, stopped in front of the door, and stood there for an extended period of time. Price was then apprehended by officers inside the hotel room.

The officers searched Price's person and recovered his cell phone and a condom. The officers later searched Price's vehicle and recovered empty packaging for pills to enhance one's performance during sexual intercourse. Finally, the officers obtained a warrant to search the cell site location information for Price's cell phone. The information obtained showed that, on the night of Price's arrest, Price's cell phone moved from a location near Webster (north of

Dickinson), traveled south on the interstate, and ended up at a location near the hotel at which Price was apprehended.

Price was charged with online solicitation of a minor. *See id.* § 33.021(c). He was tried, convicted, and sentenced to six years' confinement. Price appeals.

## Legal Sufficiency

In his first issue, Price contends that there is legally insufficient evidence that he knowingly solicited a "minor," i.e., "an individual whom [Price] believe[d] to be younger than 17 years of age." *Id.* § 33.021(a)(1)(B).

## A. Standard of review and applicable law

In a legal-sufficiency review, we review the evidence to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Maloney v. State*, 294 S.W.3d 613, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We assess all the evidence in the light most favorable to the prosecution, and we presume that the trier of fact resolved any conflicting inferences in favor of the prosecution. *Id.* at 618–19.

A person commits the offense of online solicitation of a minor "if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual

10

intercourse with the actor or another person." TEX. PENAL CODE § 33.021(c). For purposes of this offense, the term "minor" means both "an individual who is younger than 17 years of age" as well as "an individual whom the actor believes to be younger than 17 years of age." *Id.* § 33.021(a)(1).

## B.  Analysis

Price was charged with committing the offense of online solicitation of a minor by knowingly soliciting a person whom he believed to be younger than 17 years of age with the intent that the person would engage in sexual contact or sexual intercourse with him. Specifically, the grand jury indictment charged Price with committing the offense by acting "with the intent that [Officer] Lewis posing as [Stephanie], a minor, would engage in sexual contact and or sexual intercourse with the defendant, [and] knowingly solicit[ing] over the Internet and or by electronic mail and or by text message and or by an electronic message service the said [Officer] Lewis posing as [Stephanie] to meet the defendant."

Price only challenges the sufficiency of the evidence to support a finding that the individual with whom he was communicating by text message was a "minor," i.e., "an individual whom [Price] believe[d] to be younger than 17 years of age." *Id.* § 33.021(a)(1)(B). Thus, we consider the evidence of this element of the offense. The evidence shows that Lewis, posing as Stephanie, stated that:

- Stephanie was 14 years old;

- Stephanie lived in Pasadena, cheered for the Eagles (Pasadena High School's athletic moniker), and enjoyed drill team practice, thereby indicating that Stephanie was a high school student; and

- Stephanie's mother did not like her to date "anybody," not even "high school[ers]," and made numerous other references to Stephanie's mother, thereby indicating that Stephanie was a minor under her mother's control.

The evidence further shows that Price acknowledged that Stephanie was 14 years and that he could get "in trouble" and had "a lot to lose" if he met her, including the loss of custody of his son. Price further noted that he had seen news segments "where cops pose as girls and then arrest guys."

Thus, the evidence shows that "Stephanie" represented herself to be 14 years old, and Price later acknowledged that "Stephanie" was 14 years old. "Stephanie" repeatedly referenced her involvement in school activities, and she repeatedly referenced that she was under the authority of her mother. Price made it clear that he could get in trouble with the authorities if he went to meet with "Stephanie." From this evidence, the jury could have reasonably found that Price believed that the person with whom he was communicating was a 14-year-old high school girl—i.e., a minor. *See Maloney*, 294 S.W.3d at 619 (holding evidence legally sufficient to show that defendant believed officer was 13 years old when, *inter alia*, officer represented to defendant that she was 13 years old and defendant replied that 13 was "so young" and that he would be "in trouble" if officer's persona's mother found out about their relationship because she was "a minor").

Price nevertheless argues that there is legally insufficient evidence that he believed he was communicating with a minor because, after he told Stephanie that he was 30 years old, Stephanie responded that Price was "like only 10 years older," thereby indicating that Stephanie was around 20 years old. We disagree.

Lewis testified that when he texted that Price was "like only 10 years older" than Stephanie, he was referring not to Price's statement that he was 30 years old, but to Stephanie's earlier statement that she thought Price was 25 or 26 years old. Lewis explained that there was a lag in the time of the two individuals' conversation. From this testimony, the jury could have reasonably found that "Stephanie" was suggesting that, based on the age that she had imagined Price to be—25 or 26 years old—he was only 10 years older than her. And in any event, the jury was entitled to disbelieve Price's characterization of this evidence as revealing that "Stephanie" represented her age to be approximately 20 years old. *See, e.g.*, *id.* at 619–22 (affirming conviction for online solicitation when defendant claimed to be role-playing with putative 13-year-old whom he intended to meet for sex); *Cook v. State*, 256 S.W.3d 846, 849 (Tex. App.—Texarkana 2008, no pet.) (holding that jury could disbelieve defendant's testimony that he believed putative minor was 18 years old when officer, posing as putative minor, represented that she was 13 years old; defendant acknowledged that officer was 13; officer told defendant that she attended junior high school; and defendant told officer that he

could go to prison if they had sex because she was "under 16"); *Miller v. State*, No. 09-17-00053-CR, 2018 WL 5930437, at *3 (Tex. App.—Beaumont Nov. 14, 2018, no pet.) (mem. op., not designated for publication) (holding that jury could disbelieve defendant's testimony that he believed he was "engaged in role-playing" and that minor was actually "an adult").

We hold that there is legally sufficient evidence that Price believed he was communicating with a minor. Therefore, we overrule Price's first issue.

## Authentication

In his second issue, Price contends that the trial court abused its discretion in overruling his objection to and admitting into evidence records of text messages between him and the putative minor, "Stephanie." Price contends that the State failed to authenticate the records before offering them into evidence.

## A.     Standard of review and applicable law

We review a trial court's decision to admit evidence over an authentication objection under an abuse of discretion standard. *Washington v. State*, 485 S.W.3d 633, 640 (Tex. App.—Houston [1st Dist.] 2016, no pet.). If the trial court's ruling is at least within the zone of reasonable disagreement, we will not interfere. *Id.*

"As a condition precedent to admissibility, the proponent of the evidence must satisfy the requirement of authentication by showing that 'the matter in question is what its proponent claims.'" *Jones v. State*, 466 S.W.3d 252, 261 (Tex.

14

App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting TEX. R. EVID. 901(a)). "The question of authentication arises when the relevance of proffered evidence depends upon its identity, source, or connection with a particular person, place, thing or event." *Jones*, 466 S.W.3d at 261–62 (quoting *Angleton v. State*, 971 S.W.2d 65, 70 (Tex. Crim. App. 1998)) (internal quotation marks omitted). "In performing its 'gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic.'" *Jones*, 466 S.W.3d at 262 (quoting *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Id.* "It need not be proven beyond a reasonable doubt, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity." *Jones*, 466 S.W.3d at 262.

The Court of Criminal Appeals has explained that text messages can be authenticated "in myriad ways, depending upon the unique facts and circumstances of each case, including through the testimony of a witness with knowledge or through evidence showing distinctive characteristics." *Butler v. State*, 459 S.W.3d

595, 601 (Tex. Crim. App. 2015); *see* TEX. R. EVID. 901(b)(1) (testimony of witness with knowledge); TEX. R. EVID. 901(b)(4) (distinctive characteristics). "Conversations and events that precede or follow the communications at issue, when identified or referred to within the written communication, can provide contextual evidence demonstrating the authenticity of such communications." *Butler*, 459 S.W.3d at 604.

## B.    Analysis

At trial, Agent Lewis testified that he posted a Craigslist personal ad, posing as a 14-year-old high school girl named Stephanie. Lewis further testified that he received a response to the personal ad from Price and that the two of them then began texting each other over the Kik messaging app. They eventually exchanged pictures—Lewis texted Price a picture of the putative minor, and Price texted Lewis a picture of himself. And, after the conversation turned sexual in nature, Lewis provided Price the location of a specific hotel room at which Price could meet the putative minor. Price confirmed that he was coming and provided updates as he made his way to the hotel. Price then arrived at the hotel room, as he said he would, and was arrested in front of the hotel room to which Lewis had directed him.

The prosecutor then provided Lewis with State's Exhibit No. 2, and Lewis testified that the exhibit was "a fair and accurate depiction of the messages that

16

[he] sent and the messages that [he] received on the Kik Messenger app." The prosecutor then moved to admit State's Exhibit No. 2, and Price objected on authentication grounds. The prosecutor responded that the records were properly authenticated by Agent Lewis's testimony that (1) the records were a fair and accurate depiction of the messages he sent and received on April 23, 2016 and (2) Price was apprehended shortly after the conversation ended at the very location to which Lewis had directed the person with whom he had been texting. The trial court overruled Price's objection and admitted the records.

Price argues that the trial court's ruling was an abuse of discretion because the State presented no evidence that he was the person with whom Lewis had been texting over Kik Messenger. Price observes that there was no witness who saw him write the messages, and no witness who associated a cell-phone number to the messages. The State responds that, through Agent Lewis's testimony regarding the content of the text messages and Price's own conduct in response, the State made a sufficient threshold showing that the proffered records were what the State claimed them to be—the text messages between Price and Lewis posing as the minor Stephanie. We agree with the State.

Lewis's testimony regarding the events that preceded and followed the text messages, when considered together with the actual text messages, provides contextual evidence demonstrating the message's authenticity of the text messages.

17

*See id.* Importantly, Lewis, posing as Stephanie, provided Price with a specific hotel room at which to meet the putative minor, and Price arrived at that specific hotel room at the time indicated in the text messages.

The Court of Criminal Appeals has cited several out-of-state cases that support this method of authentication among the many that are available to the proponent of evidence. *Tienda*, 358 S.W.3d at 640–41 nn.32–33 (citing, *inter alia*, *United States v. Barlow*, 568 F.3d 215, 218 (5th Cir. 2009) (defendant arranged via online instant messages to meet at state park, appeared at appointed place and time, and admitted to police that he was there to meet recipient); *United States v. Gagliardi*, 506 F.3d 140, 143 (2d Cir. 2007) (defendant showed up at meeting place arranged during course of exchange of electronic messages); *United States v. Simpson*, 152 F.3d 1241, 1249–50 (10th Cir.1998) (combination of identifying information given by user in chat and corroborating evidence found in defendant's home near his computer sufficient to authenticate chat log); *Idaho v. Glass*, 190 P.3d 896, 901 (Idaho Ct. App. 2008) (in on-line conversation, defendant identified himself by his middle name and then appeared at time and place agreed to and in car accurately described in conversation)).

And other Texas courts of appeals have approved this method of authentication as well. *See, e.g.*, *Cook v. State*, 460 S.W.3d 703, 713 (Tex. App.— Eastland 2015, no pet.) (holding that trial court did not abuse its discretion in

18

overruling defendant's authentication objection to text messages between defendant and informant when informant testified that she texted defendant to ask him where he was, defendant responded that he was at an apartment complex, and informant then walked to apartment complex and found defendant).

We hold that the trial court did not abuse its discretion in overruling Price's objection to and admitting into evidence the records of the text messages between Price and Lewis. Therefore, we overrule Price's second issue.

## Closing Argument

In his third issue, Price contends that the trial court abused its discretion in overruling his objection to and permitting the State to argue during the punishment phase that he had "no excuse" for his conduct. Price contends that the State's argument violated his right against self-incrimination by calling attention to Price's failure to testify.

## A.    Standard of review and applicable law

Under Texas criminal law, there are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to opposing counsel, and (4) pleas for law enforcement. *Goff v. State*, 931 S.W.2d 537, 547–48 (Tex. Crim. App. 1996); *Burns v. State*, 122 S.W.3d 434, 439 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

19

The State may not comment on a defendant's failure to testify; such a comment violates the defendant's constitutional and statutory right against self-incrimination. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). In determining whether the State has improperly commented on the defendant's failure to testify, we view the State's comment from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument. *Id.* The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Id.*

**B.    Analysis**

During the punishment stage of trial, several witnesses testified on Price's behalf. Price's sister testified that, at the time Price was arrested, he had been struggling with various personal issues. Price's mother testified that Price's wife had had an affair and filed for divorce. Price's father testified that the divorce and ensuing custody battle over his son had made Price depressed. And a family friend testified that Price had been devastated by the divorce.

During closing argument, Price's trial counsel commented on Price's divorce and ensuing custody battle over his son, suggesting that these events had

20

wreaked havoc on Price's life. Price's trial counsel further suggested that these events "may have led" to Price committing the offense.

It was in the context of this evidence and closing argument of Price's trial counsel that the prosecutor made her closing argument:

> And what kills me is the defendant has a good family, a loving mother, father, sister, friends who supported him. He didn't come from a broken home, not that that would be an excuse. But he came from a good, stable home who provided him with love, all the support that anyone could have asked for. What more can one person be provided? So he is not the victim in this story. He was the predator that night. So remember that. He was not a victim. He's had everything.
>
> Yes, he was going through a difficult time in his life. Divorce, custody issues, that's got to be difficult. However, lots of people go through life where things are thrown at you, but that doesn't mean that that's okay for you to get online and solicit a minor for sex. It doesn't provide any type of justification for that.
>
> And I want to turn your attention to one particular passage in the messages and it's where Agent Lewis, posing as Stephanie, tells the defendant, "Maria's mom caught her with her ex and he was 27 and she blew up but didn't call the cops." And what was his answer to that? "Damn. Well at least she didn't call the cops." What does that tell you?
>
> He is not the victim in this story. He's had every opportunity, and there's just one excuse after another. And look at the judgment. You get to take this with you into the deliberation room. And look at the timeline, the dates when he was arrested for this case and where we are today. He's had plenty of opportunity all of his life it seems. So I don't—really the victims are his family because they're having to be there for him and sit here through this trial, all of that. I feel bad for his family for what he is putting them through. These are all things that are not happening to him. These are things that are a product of his own decisions. He made those things happen. It's because of his

21

actions and decisions that we are all here today. And so think about the seriousness of this charge here. And because of the seriousness and because of the fact that we all have life that's thrown at us, things that we have to deal with, but we don't get online and solicit minors for sex. No, that's not what we do.

And he has no excuse, no excuse whatsoever. Look at how loving and supportive his entire family was, even his friend's family. So much love and care offered to him.

At this point, Price's trial counsel objected that the State's argument that Price had "no excuse" was an improper comment on Price's failure to testify. The trial court overruled the objection.

In this context, the prosecutor's comment that Price has "no excuse" for his conduct could reasonably be construed as a response to (1) the witnesses who testified that Price had been experiencing personal difficulties around the time he committed the offense and (2) Price's trial counsel's closing argument, which suggested that these personal difficulties were an excuse for Price's conduct. Because we are to resolve any ambiguities in the language in favor of it being a permissible argument, we cannot say that the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on Price's failure to testify. *See id.*; *see also Kuhn v. State*, 393 S.W.3d 519, 542–43 (Tex. App.—Austin 2013, pet. ref'd) (holding that prosecutor's comment that defendant had "no reason" for "penetrating a child's private parts" was not improper comment on defendant's failure to testify but

22

rather an attack on credibility of defendant's explanation for his conduct). We hold that the trial court did not abuse its discretion in overruling Price's objection. Therefore, we overrule Price's third issue.

## Conclusion

We affirm the trial court's judgment.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish.  TEX. R. APP. P. 47.2(b).