**Affirmed and Majority and Dissenting Opinions filed February 15, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00884-CR

---

**ANGEL DEBOTTIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 92795-CR**

---

## M A J O R I T Y   O P I N I O N

After appellant Angel Debottis pleaded guilty to two counts of intoxication manslaughter, a jury assessed her punishment at fifteen years' confinement for each count. She challenges the judgment in two issues. Appellant argues that the trial court reversibly erred in admitting (1) appellant's post-*Miranda* statements and (2) a toxicology report included in appellant's medical records. After reviewing the record and legal authority, we overrule both issues and affirm the trial court's judgment.

## Background

Appellant consumed several alcoholic beverages and then crashed her car into another vehicle, killing the other vehicle's two occupants. Alvin Police Department Officers Matthew Jrab and John Flores responded to the scene. Emergency personnel treated appellant in the back of an ambulance. Appellant admitted to having four alcoholic beverages before driving her car.

While appellant was in the ambulance, Officer Flores told her that she was in custody for suspicion of intoxication manslaughter and read appellant her *Miranda* rights,[1] including her right to remain silent. She chose to remain silent. The ambulance transported appellant to a nearby hospital. Officer Jrab accompanied appellant to the hospital and stayed with her for several hours, to "make sure that she didn't try to flee or anything like that."

Appellant pleaded guilty to two counts of intoxication manslaughter, and the case proceeded to a punishment trial by jury. During trial, the court admitted, among other things, video footage from the officers' body-worn cameras and appellant's medical records from the hospital.

The jury assessed appellant's punishment at confinement in the penitentiary for a term of fifteen years for each count. The trial court signed a judgment in accordance with the jury's verdict, ordering that the sentence for count two would run consecutively with the sentence for count one.

Appellant timely appealed.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**Analysis**

## A.     Admission of Post-*Miranda* Statements

In her first issue, appellant challenges the trial court's admission of certain post-*Miranda* statements.  The State introduced evidence that, while in the hospital, appellant was "flirtatious" with Officer Jrab, was concerned about the location of her debit card so she could post bond, "giggl[ed] and laugh[ed]," and said that she believed her life was over.  According to appellant, the State relied on this evidence to suggest that appellant was unconcerned for the victims and "selfish, recalcitrant, and lacking in remorse," which probably led the jury to assess a more severe punishment than it would have without this evidence.  Appellant complains that the State's use of this evidence to imply a lack of remorse violated her right to remain silent, which she invoked when advised of her *Miranda* rights while in the ambulance.

To safeguard a person's Fifth Amendment privilege against self-incrimination, law enforcement officials must inform a person in custody before questioning that she has the right to remain silent and that any statement she makes may be used against her in court.  *Miranda*, 384 U.S. at 444; *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).  Trial comments on a defendant's decision to remain silent after receiving *Miranda* warnings violate due process and infringe on the right against self-incrimination.  *See Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (commenting on a defendant's post-arrest silence is akin to commenting on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right).  Generally, a comment on a defendant's lack of remorse is an impermissible reference to the defendant's failure to testify (or otherwise remain silent) because only the defendant can testify as to

3

her own remorse. *Swallow v. State*, 829 S.W.2d 223, 225-26 (Tex. Crim. App. 1992); *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex. Crim. App. 1984).

The State responds that the record shows no *Miranda* violation because the hospital conversations at issue did not stem from a custodial "interrogation," and because an accused's volunteered statements following *Miranda* warnings are admissible, even if the statements were made while in custody. The State cites *Pugh v. State*, 624 S.W.3d 565 (Tex. Crim. App. 2021), *Cross v. State*, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004), and *Crawford v. State*, 648 S.W.3d 461 (Tex. App.—San Antonio 2021, no pet.)), for the proposition that when a suspect invokes her right to remain silent but then initiates "small talk" with law enforcement, she "waives her Fifth Amendment rights, and its protections fall away."

We will presume without deciding that the challenged portions of appellant's post-*Miranda* conversations with Officers Jrab and Flores in the hospital, together with testimony that appellant did not inquire about the victims, amounted to an impermissible comment on appellant's silence as a lack of remorse and was erroneously admitted. Admission of evidence in violation of appellant's Fifth Amendment right to remain silent would be constitutional error, *see Ramos*, 245 S.W.3d at 419, which we review under the constitutional harmless-error standard. *See* Tex. R. App. P. 44.2(a). Under this standard, we must conclude that the error was harmful unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.* Factors we consider include "the nature of the error (e.g., erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely

4

have assigned to it in the course of its deliberations." *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

Appellant cites portions of Officer Flores's testimony to support her contention that the State's repeatedly emphasized her lack of remorse:

Q. Okay. Now you've been there 20 plus minutes. Correct?

A. Yes, sir.

Q. Has she asked you about the victims at all?

A. No, sir.

Q. Asked you if anybody is doing all right that was out on scene?

A. No, sir.

Q. Did she ask about her debit card?

A. Yes, sir.

Q. Did she ask about her debit card a couple of times?

A. Yes, sir.

Q. And was it after it couldn't be located it appears that she first showed signs of emotion?

A. Yes, sir.

Q. Okay. And did you hear her make some comment about how she wasn't going to be able to bail out of jail tonight because she didn't have her debit card?

A. It was intelligible [sic] to me at the time. I couldn't understand.

Q. Were you able to hear it now?

A. Yes, sir.

Q. Okay. So that was when she showed emotion. Not about the two deceased people. Correct?

A. That's correct, sir.

. . .

Q. And to you what does her main concern appear to be at this point in time?

5

A. Undergarments.

Q. Okay. Her underwear?

A. Yes, sir.

Q. Not the condition of [] anybody or anybody's family members. Correct?

A. No, sir.

Q. But retrieving her underwear. Correct?

A. Yes, sir.

This brief testimony came during a longer examination of Officer Flores, who was one of fifteen prosecution witnesses (in addition to four defense witnesses). Appellant also points to the officers' body-cam videos, but it is unclear from the record how much of the videos were played to the jury. Based on our review of the exhibits, the periodic small talk between appellant and Officer Jrab, which was punctuated by long periods of silence, comprised at most fifteen to twenty minutes of a two-and-a-half-hour-long video of Officer Jrab's presence at the hospital.[2] The video of Officer Flores's twenty-minute presence at the hospital included the questions from appellant regarding the whereabouts of her debit card and underwear. Again, these interactions with appellant were only a few minutes long. Notably, the State did not refer to Officer Flores's testimony, or either

---

[2] The prosecutor and Officer Jrab had the following exchange:

Q. So the video is for the jury to see and they can see the entirety of the video. Is that correct?

A. Correct.

Q. But the last -- and it's not quite 30 minutes. It's a little under 30 minutes -- is where a conversation takes place between you and the Defendant. Is that correct?

A. Yes, ma'am.

Q. Okay. Prior to that there is not a whole lot of talking going on. It's just you in the room watching her on the hospital bed. Is that right?

A. Correct. Yes, ma'am.

officer's body-cam video, during closing argument.  We do not find that the State placed meaningful emphasis on appellant's post-incident lack of remorse during the trial.[3]  This factor weighs against a finding of harm.

Next, we consider the probable implications of the presumed error and the weight the jury would likely have assigned to the evidence at issue during its deliberations.  Appellant argues that the erroneous admission of the body-cam footage and the officers' related testimony probably led the jury to sentence appellant "more harshly."  Appellant cites "substantial" mitigating factors that she claims would have lessened appellant's sentence but for the erroneous admission of the challenged evidence—her youth, evidence of post-offense rehabilitation, strong family and community support, acceptance of responsibility, apparent trauma from childhood separation from the nuclear family, and lack of criminal history.

The record does not support appellant's claim that the challenged evidence probably led the jury to sentence appellant more harshly than it otherwise would have had the evidence been excluded.  The implications of admitting the challenged evidence are not likely to have had a significant impact when considering the record as a whole.  Appellant effectively neutralized the potential negative impact of the evidence during her cross-examination of the State's

---

[3] Appellant also relies on a portion of Officer Jrab's testimony in which the State asked, "You stated earlier that you didn't think that her behavior at the hospital was inappropriate.  But giggling and laughing after killing two people, three and a half hours after killing those two people, is that appropriate behavior?"  Officer Jrab answered, "No, ma'am."  This testimony, however, was in response to defense counsel's question asking Officer Jrab, "In your conversation with her at the hospital was there anything about her demeanor that seems inappropriate?"  Officer Jrab answered, "No."  Because defense counsel, not the prosecutor, opened this line of questioning, and because the cited testimony was so fleeting, we cannot say that the State emphasized appellant's supposed lack of remorse during Officer Jrab's testimony.  *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (directing reviewing courts to consider the character of the alleged error and how it might be considered in connection with other evidence in the case).

witnesses and by presenting controverting testimony during her case-in-chief. For example, on cross-examination, Officer Jrab acknowledged that appellant, while in the ambulance, showed concern for others and asked more than once whether she had hurt anyone. When appellant overheard on the police radio that two people were killed, Officer Jrab saw appellant begin crying. Appellant also called four witnesses during her case-in-chief, each of whom testified regarding her remorse and her acceptance of responsibility. Additionally, during closing arguments, appellant's attorney asserted that "[h]er very first statement [to police] is taking responsibility for this." Her attorney also posited to the jury that appellant pleaded guilty knowing she was going to prison and that she had not "earned" community supervision.

Moreover, there was substantial evidence countering the mitigating evidence produced by appellant, on which the jury likely placed great weight in assessing the sentences. The most significant piece of evidence was the video of the accident itself, which clearly captured the speed of appellant's vehicle and the violent nature of the impact. Such videos are often the "most compelling evidence." *Johnson v. State*, No. 14-93-00367-CR, 1994 WL 622048, at *1 (Tex. App.—Houston [14th Dist.] Nov. 10, 1994, pet. ref'd) (not designated for publication); *accord Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 542 (Tex. 2018) ("A video can be the single most compelling piece of evidence in a case, captivating the jury's attention like no other evidence could."). The video showed appellant driving "off the road" at sixty-five miles per hour, and seemingly without braking, headlong into the driver's side of the victims' car, which was stopped and waiting to turn into the roadway. The force of the impact killed the two occupants almost instantly and propelled their car into a power pole, which in turn caused a

transformer to "explode." Emergency responders had to use the "jaws of life" to access the victims' car and retrieve their bodies.

Similarly, during closing arguments, the State emphasized the conscious choice appellant made to drink and drive, despite being a bartender who "understands that people who are intoxicated shouldn't operate motor vehicles," and the enormous impact of the crime on the family of the victims, a fifty-five-year-old mother and her son who was months shy of his twenty-first birthday. The State referred to the testimony from appellant's father, Jim, who testified on appellant's behalf. Jim testified that appellant felt like "the victims' family is, you know, out for blood" and that appellant blamed the district attorney's office for being too vindictive against her.

The permissible punishment is between two and twenty years' confinement and a fine of not more than $10,000. *See* Tex. Penal Code §§ 12.33 (second-degree felony punishment), 49.08(b) (intoxication manslaughter is a second-degree felony). The jury assessed punishment of fifteen years' confinement for each count and did not assess a general fine under section 12.33 for either count.[4] The jury also found that appellant used or exhibited a deadly weapon for each count. Thus, although the sentences were on the higher end of the statutory range, the jury did not assess the maximum allowable.[5]

---

[4] We note that defense counsel explained to the jury that appellant would be eligible for community supervision (which he had previously said she had not "earned") if they sentenced appellant to confinement for two to ten years. The written judgment includes a $100 fine under Code of Criminal Procedure article 102.0185.

[5] During the sentencing hearing, the court granted the State's motion to stack these two sentences. The judgment accordingly orders that the punishment for count two would run consecutively with the punishment for count one. *See* Tex. Code Crim. Proc. art. 42.08(a). Appellant does not challenge this aspect of the judgment.

Based on our review of the entire record, we conclude that the jury likely did not give the brief evidence of appellant's post-*Miranda* conversations with the officers significant weight and instead focused, as the prosecutor urged, on the severity of the acts constituting the offense and "the tragedy [the victims'] family has had to endure and will endure for the rest of their lives." We determine beyond a reasonable doubt that the error, if any, did not contribute to the jury's assessment of punishment. *See, e.g.*, *Snowden*, 353 S.W.3d at 825-26; *Fenn v. State*, No. 01-10-00383-CR, 2011 WL 2651914, at *4-5 (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. ref'd) (mem. op., not designated for publication) (assuming prosecutor's comment on defendant's silence was error, error did not contribute to conviction or punishment).

We overrule appellant's first issue.

## B.    Admission of Medical Records

In her second issue, appellant complains about the admission of a lab report showing that her blood alcohol content two hours after the crash was 0.254. Based on that test result, a nurse who treated appellant testified that appellant was suffering from acute alcohol toxicity on the night of the crash.[6] Appellant contends that the lab report is inadmissible hearsay within hearsay. She also asserts what we construe as a Confrontation Clause argument. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Id.*

Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of

---

[6] A witness testified without objection that the "legal level of intoxication [for drivers]" is 0.08. *See* Tex. Pen. Code § 49.01(2)(b).

10

the matter asserted; and as such, hearsay is inadmissible evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. *See* Tex. R. Evid. 801(a), (d), 802. "If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay." *Coble v. State*, 330 S.W.3d 253, 290 n.101 (Tex. Crim. App. 2010) (internal quotation omitted); *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). A statement about a statement offered for the truth of the matter asserted is considered hearsay within hearsay.

At trial, defense counsel timely asserted a double hearsay objection to the entirety of appellant's medical records, which consisted of 127 pages. When an exhibit encompasses multiple statements, only some of which are inadmissible hearsay, an objecting party must identify the specific statements that are objectionable to preserve any error for appellate review. *See, e.g.*, *Whitaker v. State*, 286 S.W.3d 355, 368-69 (Tex. Crim. App. 2009) (global hearsay objection to audiotapes insufficient to preserve error as to specific statements made within recording); *Barnes v. State*, 876 S.W.2d 316, 329 (Tex. Crim. App. 1994) (global hearsay objection to entire packet of documents insufficient to preserve error as to specific subset of documents within packet); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g) (when evidence is admitted, a part of which is admissible and a part of which is not, it is incumbent on the party objecting to the admissibility of the evidence to specifically point out what part is inadmissible to preserve the alleged error). Other than the single page of the lab report containing appellant's toxicology test results, appellant did not direct the trial court to any other purported double hearsay within the medical records. Thus, we confine our evaluation of appellant's double hearsay argument to the lab report page that appellant specifically identified. To the extent that appellant complains

11

about the admission of any other portions of the medical records, we conclude that she did not preserve her appellate complaint because her objection was not sufficiently specific. *See Martin v. State*, 151 S.W.3d 236, 240 (Tex. App.— Texarkana 2004, pet. ref'd) (holding error not preserved when counsel did not specifically object to embedded hearsay); *see* Tex. R. App. P. 33.1(a)(1)(A).

When hearsay contains hearsay, the rules of evidence require that each part of the combined statements be within an exception to the hearsay rule. Tex. R. Evid. 805; *Sanchez v. State*, 354 S.W.3d 476, 485-86 (Tex. Crim. App. 2011). The lab report page was included in the totality of the medical records admitted into evidence. These records were accompanied by a business records affidavit consistent with the hearsay exception contained in Rule 803(6). Appellant does not dispute that the medical records fall within the business records exception to the hearsay rule.

As to the specific lab report page containing appellant's blood alcohol test result, the State argues that page is admissible under the hearsay exception for statements made for medical diagnosis or treatment. Tex. R. Evid. 803(4). Under this exception, a hearsay statement is not excluded if it: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). For this exception to apply, the proponent must show that (1) the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment, and that proper diagnosis or treatment depended upon the veracity of the statements, and (2) the statements are pertinent to diagnosis or treatment, that is, it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant. *Taylor v. State*, 268 S.W.3d 571, 588-89, 591 (Tex. Crim. App. 2008); *Jackson v. State*, No. 14-19-

12

00365-CR, 2020 WL 6326373, at \*2 (Tex. App.—Houston [14th Dist.] Oct. 29, 2020, no pet.) (mem. op., not designated for publication).

The record demonstrates that appellant was transported to the hospital after receiving several injuries during the crash. The medical records reflect the hospital staff's diagnosis and treatment, which included a diagnosis that appellant was suffering from acute alcohol toxicity. The State called as a witness the emergency room nurse who treated appellant on the night of the incident. She explained that an analysis of appellant's blood alcohol content was pertinent to the doctor's diagnosis of acute alcohol toxicity. The toxicology report containing appellant's blood alcohol level specifically stated that the testing results "should be used for medical purposes only." We hold that the blood test performed at the hospital by hospital staff was conducted for medical diagnosis or treatment, and the test results were admissible under Rule 803(4). *See Garza v. State*, No. 13-19-00472-CR, 2021 WL 822301, at \*4-5 (Tex. App.—Corpus Christi Mar. 4, 2021, no pet.) (mem. op., not designated for publication). The trial court did not abuse its discretion in overruling appellant's hearsay within hearsay objection to the lab report.

Appellant appears to raise an additional challenge to the lab report's admissibility. Appellant contends that the witness called by the State "could not lay a proper foundation, as she: i) could not testify that the lab was properly accredited at the time the testing was conducted; ii) lacked the training and professional credentials to understand or interpret the test results; and iii) was not involved in the testing process at the lab." This argument implicates the Confrontation Clause. *See, e.g.*, *Russell v. State*, No. 14-15-00036-CR, 2016 WL 1402943, at \*5 (Tex. App.—Houston [14th Dist.] Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication) ("As is clear from these excerpts, the objection

13

appellant made to the blood analysis evidence was that he had not had an opportunity to confront the nurse who had drawn the blood from whom the 'whole foundation' of the 'blood itself' was coming. This objection may be construed as a Confrontation Clause objection and perhaps that the proper foundation had not been laid to the admission of the blood.").

The single sentence quoted above from appellant's brief constitutes the entirety of appellant's Confrontation Clause argument. Appellant cites no law regarding the Confrontation Clause, nor does she substantively explain that the admission of the toxicology report violated her constitutional rights. Our briefing rules require an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. Tex. R. App. P. 38.1(i). Appellant's Confrontation Clause contention does not comply with this rule, and therefore we do not address the merit of appellant's argument. *See Cain v. State*, 501 S.W.3d 172, 176 (Tex. App.—Texarkana 2016, no pet.) ("To the extent Cain's appeal intends to claim a Confrontation Clause violation, it is overruled as insufficiently briefed."); *accord also Dewitt v. State*, 651 S.W.3d 669, 674 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("Because hearsay and the Confrontation Clause are separate grounds to object to the admission of evidence, we conclude appellant has waived his hearsay complaint due to failure to properly brief the issue.").

In any event, we note in closing that any error in the admission of the lab report was harmless. *See* Tex. R. App. P. 44.2(b). Not only did appellant plead guilty to intoxication manslaughter, but ample evidence of appellant's intoxication was introduced beyond the toxicology results. Officers Jrab and Flores testified that, when in the back of the ambulance, appellant admitted consuming four alcoholic beverages before driving and admitted sitting in her car for twenty

14

minutes before leaving her point of origin "in order to sober up." Officer Flores testified that he could "smell alcohol on [appellant]." The jury also watched video of the accident, which, as described above, showed the forceful collision between appellant's car and the victims' car. We conclude that any error in the admission of the toxicology results did not affect appellant's substantial rights. *See Blackwell v. State*, No. 03-03-00337-CR, 2005 WL 548245, at *4 (Tex. App.—Austin Mar. 10, 2005, no pet.) (mem. op., not designated for publication).

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J., dissenting) Publish — Tex. R. App. P. 47.2(b).