

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GIANCARLO POMPERMAYER, | § | No. 08-24-00047-CR |
| Appellant, | § | Appeal from the |
| v. | § | 156th Judicial District Court |
| THE STATE OF TEXAS, | § | of McMullen County, Texas |
| Appellee. | § | (TC# M-22-0011-CR-B) |

## MEMORANDUM OPINION[1]

A jury found Appellant Giancarlo Pompermayer guilty on seven counts of knowingly using a motor vehicle to transport seven individuals with the intent to conceal each from a peace officer, and with the intent to obtain a pecuniary benefit. In a single issue on appeal, Appellant asserts he was denied effective assistance of trial counsel because (1) counsel failed to review the contents of State's Exhibit 56 prior to trial; and (2) counsel failed to object to hearsay evidence used to corroborate accomplice witness testimony. Finding no error, we affirm.

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

# I. RELEVANT FACTUAL BACKGROUND[2]

In the early hours of January 18, 2022, McMullan County Deputy Brett Powell was pursuing a truck when the truck hit an obstacle, causing it to fly through the air and eventually land nose down and disabled. Miguel Mejia both owned and drove the truck while Appellant rode in the passenger seat providing directions from his cell phone. Mejia testified he and Appellant "had a job to go pick up some people," and they would be paid about $18,000. Seven individuals were being transported inside the truck. During a search of the vehicle, two cell phones were found—an Android belonging to Mejia and an iPhone belonging to Appellant.

Following Appellant's arrest and pursuant to a search warrant, Investigator Megan Anderson of the Atascosa County Attorney's Office testified she extracted data from a recovered phone and downloaded it to an external hard drive. She described the nature and content of the information extracted from the phone and that it included information about the route taken by Mejia and Appellant on the occasion at issue. Also, the extracted data included texting conversations from WhatsApp[3] between two individuals identified as "Jb" and "El Nino Binladen." Investigator Anderson testified the blue message bubbles appearing in the data identified text messages sent by "Jb," while green message bubbles identified like messages sent by the person using the phone from which the data was recovered. The user of the phone was identified as "El Nino Binladen." Supplementing this testimony, Investigator Norman Garza of the McMullan County Sheriff's Office translated some of the WhatsApp conversations between "Jb" and "Binladen" (hereinafter, the "Binladen" conversations) from Spanish to English. The messages

---

[2] Because Appellant does not challenge the sufficiency of the evidence to support his conviction, we set forth an abbreviated background as relevant to the issue on appeal.

[3] Anderson described WhatsApp as a texting and calling application.

between the parties generally discussed directions and pin locations. Investigator Garza also translated messages in two green bubbles that stated, "2,000 per person," and "Eight thousand for four."

At the close of all evidence, the jury found Appellant guilty of each count charged. In accordance with the jury's verdict on punishment, the trial court sentenced Appellant to 20 years' imprisonment for each count, with all counts running concurrently, and a single $10,000 fine.

This appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Appellant asserts his trial counsel was ineffective because counsel (1) failed to review the data extracted from his cell phone contained in State's Exhibit 56, and (2) failed to raise a hearsay objection to the "Binladen" conversations.

To successfully assert an ineffective assistance of counsel claim, an appellant must show that: (1) trial counsel's performance was "deficient because it fell below an objective standard of reasonableness;" and (2) "a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rylander v. State*, 101 S.W.3d 107, 109–10 (Tex. Crim. App. 2003) (en banc) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. An appellant's failure to show either deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander*, 101 S.W.3d at 110.

"The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "[C]ounsel's deficiency must be affirmatively

3

demonstrated in the trial record" and an appellate court "must not engage in retroactive speculation." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Because "the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance[,] the better course is to pursue the claim in habeas proceedings." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Where the record is silent and fails to provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We do not engage in speculation in order to find ineffective assistance when the record is silent as to an attorney's trial strategy. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). The only exception is when counsel's conduct "was so outrageous that no competent attorney would have engaged in it." *Andrews*, 159 S.W.3d at 101.

## A. Failure to review evidence

Appellant's first complaint is that trial counsel failed to review the data extracted from his cell phone contained in State's Exhibit 56 based on the following statement made by defense counsel in his closing argument:

> I found that the State's technology presentation was impressive, okay. You know, you click some of the links, they're called hyperlinks, you click it and it takes you to other evidence, sometimes written, sometimes videos, okay. *I got that evidence in two flash drives and CDs and DVDs*, and I presumed it was my computer, but when I clicked the hyperlink, it didn't hyper, *so some of the evidence I saw for the first time like you did on this one here, okay*. I blame that on my computer, you know, maybe not as advanced as the technology they have. Again, it was an impressive presentation. What concerns me, a side note, now I understand how the information on our cell phones, you know, is accessible . . . I had no idea that much information could be taken from cell phones. Now I understand how the millions of the anti-Christs some day [sic] will be tracking us, for what it's worth. (Emphasis added.)

According to Appellant, his counsel's failure to review the exhibit prior to trial was not a strategic decision and contributed to counsel's failure to raise a hearsay objection to the "Binladen" messages. Appellant contends this is "the rare case where the record on direct appeal is sufficient to prove that counsel's performance was deficient[.]" *Robinson*, 16 S.W.3d at 813 n.7. We disagree.

In *Robinson*, the Court of Criminal Appeals addressed whether an appellant's ineffective assistance claim was waived by failing to make a timely request, objection, or motion to the trial court that raised the ineffective assistance claim. *Id.* at 808. The Court concluded there was no evidence in the record that appellant waived his right to the effective assistance of counsel and there was no meaningful or realistic opportunity for appellant to present his ineffective assistance of counsel claim to the trial court either at trial or in a motion for new trial. *Id.* at 813. The Court remanded the cause to the court of appeals to consider appellant's ineffective assistance claim on the merits. *Id.*

Appellant also relies on *Johnson v. State* for a similar proposition, contending the record before this Court is sufficient. 172 S.W.3d 6, 12 (Tex. App.—Austin 2005, pet. ref'd). In *Johnson*, trial counsel failed to conduct sufficient discovery to learn there was an audiotape of the incident that was the basis of the offense. *Id.* Upon learning mid-trial of the audiotape's existence, trial counsel ignored appellant's request to review the tape, agreed to admit an incomplete version of the tape, and failed to seek admission of the only portion of the tape that was arguably exculpatory. *Id.* Counsel also failed to object to questions by the prosecutor and responses by the State's witnesses suggesting that the only portion of the tape that was redacted was "surplusage" footage, irrelevant to the incident at issue. *Id.* The appellant filed a motion for new trial alleging she was denied effective assistance of counsel, and the trial court conducted a hearing on the motion. *Id.* at

10. Therefore, on appeal, the *Johnson* court had both the trial record and the record from the hearing on the appellant's motion for new trial at which both the appellant and trial counsel testified. *Id.* Our sister court of appeals concluded that "the facts were sufficiently developed in the record on the motion for new trial and trial counsel was afforded the opportunity to explain any strategy decisions"; thus, "[t]his fully developed record . . . warrants direct appellate review." *Id.* at 13.

Contrary to *Johnson*, Appellant did not request a new trial hearing in this instance; therefore, we are only left to speculate about why trial counsel did not review or request a continuance to review State's Exhibit 56 once he realized he could not access the evidence given to him. Because counsel's deficiency was not affirmatively demonstrated in the trial record, Appellant failed to overcome the strong presumption of reasonable assistance.

Even if we assume counsel's performance was deficient, Appellant has not shown "a probability sufficient to undermine confidence in the outcome existed that, but for counsel's (failure to review or request a continuance to review State's Exhibit 56), the result of the proceeding would have been different." *Rylander*, 101 S.W.3d at 109–10. Appellant speculates that counsel's failure to review State's Exhibit 56 led to his failure to raise a hearsay objection to the "Binladen" messages. He contends, in conclusory fashion, that "the outcome on punishment would have been different absent such [a] deficiency." We are in no position to gauge how counsel's failure might have affected the result, short of sheer speculation. Therefore, on this record, we are not convinced of a reasonable probability that, but for trial counsel's deficient performance, the outcome of the punishment would have been different. *See Strickland*, 466 U.S. at 694.

For these reasons, we conclude Appellant did not satisfy his burden on this portion of his complaint.

## B.  Failure to object to certain testimony

Appellant's second complaint is that trial counsel failed to raise a hearsay objection to the "Binladen" conversations. Appellant asserts these conversations were out-of-court statements offered to prove the truth of the matter asserted—that he was transporting people for a pecuniary benefit.

### (1)  Relevant law

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). An exception to the rule against hearsay are statements "offered against an opposing party [and] made by the party in an individual . . . capacity"; these statements are not hearsay. Tex. R. Evid. 801(e)(2)(A); *see Jones v. State*, 466 S.W.3d, 252, 265–66 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding that because "the State presented some evidence indicating that [defendant] was responsible for the contents of the phone," text messages on phone were admissions by party opponent). "The only requirements for admissibility of an admission of a party opponent under Rule 801(e)(2) is that the admission is the opponent's own statement and that it is offered against" the party. *Ripstra v. State*, 514 S.W.3d 305, 315 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding trial court did not err in admitting appellant's Facebook posts as admissions of a party opponent).

### (2)  Relevant background

Investigator Anderson testified about the data extracted from Appellant's cell phone, including information about the travel route and the location of cellular towers off which the phone

7

"pinged." The location "pings" showed travel starting in the Laredo area and ending in McMullan County. Investigator Anderson described that several applications on the phone showed the same username of "El Nino Binladen" and were associated with the email address of gpomermayer@gmail.com. Also, she noted that some of the data on the WhatsApp conversations showed the phone had been in use beginning at about 5:23 a.m. on January 18, 2022. Anderson said the data showed conversations between "Jb" (in a blue bubble) and "Binladen" (in a green bubble). She detailed that "Binladen" was the owner of the phone, that the green bubbles were from the person using the phone, and that it was associated with the email address of gpomermayer@gmail.com. Anderson testified the green bubbles also showed photos of a black truck and a hotel room key envelope. Other evidence at trial showed that Mejia and Appellant stayed overnight in a hotel before picking up the individuals they were paid to transport.

Investigator Garza was called to translate some of the WhatsApp conversations contained in the blue and green bubbles. He testified about the exchange of directions and the "pinged" locations of the phone. Garza stated other messages in the blue bubble asked, "where do we go to get a job bringing people" and "[w]here do you have them and where do I turn them in?" The green-bubble answered back to pick up people in Laredo and drop them off in Austin or San Antonio. Investigator Garza testified that the green bubble responded with slang for "$2,000 per person," or $8,000 "for four." Based on his experience working on smuggling cases, Investigator Garza further testified the statement meant "the amount that they're going to get paid per person, $2,000 per person." He confirmed it meant per person being smuggled.

### (3)   Analysis

Before we begin our analysis, we note the confusion about both the complained-of testimony and the record on appeal. In Appellant's brief, he specifically complains about and cites

8

to the reporter's record containing Investigator Garza's testimony regarding the payment of $2,000 per person. However, the State characterizes Appellant's objection as being lodged against Investigator Anderson's testimony while ignoring any mention of Investigator Garza's testimony. We construe Appellant's argument on appeal as complaining about Investigator Garza's testimony and not Investigator Anderson's testimony.

Appellant confuses the identity of the individuals in the blue and green message bubbles. He contends the "messages in the BLUE message bubbles are from Appellant and the GREEN message bubbles are from a WhatsApp user named "EL NINO BIN LADEN." He then reverses his position on the identity of the individuals in the bubbles by contending "the messages contained in SX56 [were] attributed to the unknown WhatsApp user who calls themself EL NINO BIN LADEN in the BLUE message bubbles." Appellant claims the State never made any effort to discover "Binladen's" identity. Based on Appellant's misunderstanding of the record, he contends the "Binladen" statements were hearsay.

Contrary to Appellant's contention on appeal, Investigator Anderson testified the "Binladen" messages were in the green message bubbles, which were messages from the phone's user and owner, and were associated with an email address of gpomermayer@gmail.com. The record also showed that (1) the iPhone from which the data was retrieved belonged to Appellant; (2) several of the applications on the phone showed the user name "El Nino Binladen" and were associated with an email address containing Appellant's first initial and last name; (3) the green message bubbles were from the phone's user and owner, who was Appellant; and (4) the green message bubbles were associated with an email address containing Appellant's first initial and last

name.[4] Accordingly, the statement about a $2,000 payment per person was "made by the party [Appellant] in an individual . . . capacity." Tex. R. Evid. 801(e)(2)(A). Because the complained-of statement was that of a party-opponent it was not hearsay. *See id.* Therefore, Appellant has not demonstrated that trial counsel was ineffective for failing to object on the basis of hearsay.

Based on the record before us, the strong presumption of reasonable assistance, and the absence of any explanation regarding trial counsel's strategy, we cannot say that Appellant satisfied his burden under the deficient-performance prong to show that trial counsel's alleged failures fell below the standard of prevailing professional norms or were so outrageous that no competent attorney would have engaged in them. For these reasons, we conclude Appellant also did not satisfy the remaining portion of his complaint.

Accordingly, Appellant's sole issue is overruled.

### III.   CONCLUSION

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

November 6, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[4] Throughout the State's closing argument during the punishment phase, the prosecutor referred to Appellant as "El Nino Binladen."